# In re HIGGINS' Estate.

[Submitted January 27, 1895.   Decided March 4, 1895.]

**Estate of Decedent**—*Jurisdiction—Duties of executors.*—Executors, when quali-
fied as such, are subject to the jurisdiction of the district court, sitting in the
exercise of its probate powers.   And the duties of such executors are to pro-
ceed with the performance of their executorial duties, as imposed upon them
by the laws of the state, having due regard to the provisions of the will of
the decedent.

**Same**—*Publication of notice to creditors.*—Executors are required to publish a
notice to creditors, and, under section 147 of the Probate Practice Act, execu-
tors of estates exceeding ten thousand dollars in value are required to pub-
lish notice to creditors to present claims within ten months from the date of the
first publication, and until that time has elapsed no final decree can be entered
that there are no debts.

**Same**—*Same—Proof of outstanding debts.*—Where creditors have never had the
requisite notice to present claims against the estate of a decedent the *ex
parte* affidavits of persons interested in the estate to the effect that there are
no debts, cannot be taken as sufficient proof to enable a court in a judicial
decree to find the fact to be as stated by the affiants.

**Same**—*Duty of executors to make and return inventory.*—When the executors of
a will qualify they are required by section 118 of the Probate Practice Act to
make and return to the court a true inventory and appraisement of all the
estate of the decedent which has come into their possession and knowledge.
This inventory must contain all of the estate of the decedent, real and per-
sonal; a statement of all debts, partnerships, and other interests, bonds, mort-
gages, notes, and other securities for the payment of money belonging to the
decedent; and an account of all moneys belonging to the decedent which have
come into the hands of the executors, and, if none, the fact must be stated in
the inventory.

**Same**—*Possession of realty by executor.*—Under the Probate Practice Act the
possession of realty passes to the executor, after duly qualifying, and he is
authorized to collect rents, "until the estate is settled, or until delivered over
to the heirs or devisees."   And the right to maintain an action for the posses-
sion of real estate, or of quieting the title thereto, is conferred upon him, and
he may act in such suit with or without the heirs or devisees.   (*Black* v. *Story,*
7 Mont. 238, cited.)

**Same**—*Accounting by executors and termination of their duties.*—Executors must
account, and executorial responsibilities can only terminate after compliance
with the statutes, and after a settlement, approved by the court, has been
made, and after a distribution and a delivery up have been ordered by the
court.

**Same**—*Executors as testamentary trustees.*—Where trust duties are imposed upon
persons named as executors under a will, and such persons have duly qualified
as executors, they cannot properly assume the rights and duties of trustees
until the court has approved their accounts as executors, and ordered a dis-
tribution of the estate; in which order the executors may be directed to credit
their accounts as executors with so much of the estate as may be ordered
transmitted to their accounts as trustees.

**Same**—*Appeal—Final judgment.*—An order of the district court overruling a
motion of executors to quash and set aside an order made requiring them to
prepare and file a full and complete inventory of the estate of decedent is
final, and may be appealed from.   (*In re McFarland's Estate,* 10 Mont. 446,
cited.)

*Appeal from Fourth Judicial District, Missoula County.*

MOTION of executors to quash an order requiring them to make and file an inventory. Motion denied. WOODY and BRANTLEY, JJ. Affirmed.

Statement of the case by the justice delivering the opinion:

Appeal by Julia P. Higgins, Francis G. Higgins, and George C. Higgins, executors and trustees of the last will and testament of Christopher P. Higgins, deceased, from an order made by the district court overruling the motion of said executors and trustees to set aside an order made requiring said executors and trustees to file in said court a complete inventory and appraisement of the estate of the said Christopher P. Higgins, deceased, situated in the state of Montana, which has come into their hands as such executors. The order referred to recites that Francis G., George C., and Julia P. Higgins were, on November 20, 1889, duly appointed executors of the last will and testament of Christopher P. Higgins, deceased, and all duly qualified as such executors on the 20th of November, 1889; that more than three years have elapsed since their qualification as such executors, and that no inventory and appraisement have been filed. The court therefore ordered that they prepare and file in said court, on or before July 8, 1893, a full inventory and appraisement of the estate of the deceased, and which had come into their hands as such executors, as required by law. The motion to set aside the order of the court was based upon the grounds that the court had no jurisdiction in the matter of said estate, coming under the probate laws of the state of Montana, to make any other order with reference to said estate, but that the jurisdiction to make any orders is vested by law in a court of equity; that a court of equity alone had jurisdiction with reference to said estate since the order probating the will; that the district court, as a court of probate, has no jurisdiction to make any order relating to said estate, or to direct the said Julia, Francis, and George Higgins to do any act in said estate.

The motion was based upon the will, and affidavits of Francis G., George C., and Julia P. Higgins.

The will and testament is as follows:

"First.    I give, devise, and bequeath to my executors here-inafter named all and singular my property, real and personal, wheresoever situated, and all moneys belonging to me, of which I may die possessed, in trust, nevertheless, and to and for the following uses and purposes, namely;

"I direct that my said executors shall continue to carry on the banking business in which I am now engaged under the name of C. P. Higgins Western Bank, and to that end that they shall, so soon after my death as shall be expedient, pro-ceed to incorporate said bank with a capital stock of one hun-dred thousand dollars, under the laws of the United States, or the laws of Montana, and, when so incorporated, my said exe-cutors shall transfer to said bank all of the moneys, property, and assets now used in the business of said bank, and so much of any other funds that may come into the hands of my execu-tors as shall be necessary to make up the amount of the capital stock of said bank; and that upon the incorporation of said bank the capital stock of the same shall be equally divided among my heirs hereinafter named.

"Third.    I further direct my said executors hereinafter named to proceed to construct the block of buildings now in the course of construction by me, according to the original plans, designs, and contracts, under which the same is now being constructed.

"Fourth.    In order to carry out the purposes and direc-tions above mentioned I hereby authorize, empower, and direct my said executors to sell, convey, and dispose of any of my estate, whether real or personal, which may come into their hands.

"Fifth.    I further authorize, empower, request, and direct my said executors to sell and convey any of the estate and property belonging to me which may come into their hands, wheresoever situate, in such manner as may, in their judgment, be most for the interest of my estate, and to convert the same into cash; and I direct my said executors to invest such proceeds of sale, with all other moneys which may come into their hands, unless herein otherwise provided, and keep the same invested in safe manner, as in their judgment may seem

best for the joint and equal benefit of all my heirs hereinafter named; and, in order to carry out the provisions of this instrument, I hereby authorize and empower my executors, hereinafter named, to sign, seal, execute, acknowledge, and deliver, in due form of law, all and every such deed or deeds, conveyances and assurances in law whatsoever, as shall be necessary for granting, conveying, and assuring the same, or any part or parcel of land or real estate sold and conveyed by the authority herein granted.

"Sixth.  I further request and direct my said executors, out of such moneys belonging to me as may come into their hands, to provide for the support and maintenance of my family, and the proper education of my minor children, to wit, Maurice G. Higgins, Arthur E. Higgins, Helen U. Higgins, Hilda H. Higgins, Ronald Higgins, and Gerald Higgins.

"Seventh.  It is my wish and request that all the members of my family, while they remain unmarried, shall continue to live together at my present homestead, and, so far as possible, be united in business, and endeavor to carry out my wishes and plans relative to business, as I have heretofore explained to them.

"Eighth.  After deducting all necessary expenses of the settlement of my estate, and the support and maintenance of my family, and the education of my minor children, I hereby devise and bequeath all the residue and remainder of my estate, of every kind and nature, and wheresoever situated, unto my wife, Julia P. Higgins, and my children, Francis G. Higgins, John R. Higgins, George C. Higgins, Maurice G. Higgins, Arthur E. Higgins, Helen U. Higgins, Hilda H. Higgins, Ronald Higgins and Gerald Higgins, equally, share and share alike; and it is my will and meaning that the provision herein made for my said wife, in manner and form as aforesaid, shall be, and shall be deemed, adjudged, and taken to be in lieu, and bar of her dower, or other portion of and in all my estate.

"Ninth.  I hereby nominate and appoint my wife, Julia P. Higgins, and my sons, Francis G. Higgins, John R. Higgins, and George C. Higgins, to be the executors of this my last will and testament (without bond); and in case of the death, or

refusal to act, of any of them, the survivors, or others, of them, are hereby empowered to act and carry out the provisions of this instrument."

Francis G. and George C. Higgins, each for himself, filed an affidavit to the effect that they were conversant with the condition of the estate of the decedent, and that at the time of his death he owed nothing; that the expenses of his last sickness and his funeral were paid; that the will was duly approved, admitted, and probated on November 16, 1889, and that no debts or claims of any kind have been presented to the executors and trustees.   Julia P. Higgins, one of the surviving executors and trustees, also swears that no claims have been presented, and that the funeral expenses, and the expenses of the last illness of decedent, were paid.

*Webster & Wood,* and *McConnell, Clayberg & Gunn,* for Appellants.

I.  Under the provisions of this will the title in fee to all of the estate of the decedent passed to, and vested in, the persons named executors, as trustees, immediately upon the death of the decedent.   The powers conferred by the will attached to the persons named as executors and not to their office.   The office of executor is independent and distinct from that of trustee.   (*Estate of Delaney,* 49 Cal. 76; *Judson* v. *Gibbons,* 5 Wend. 226; *Conklin* v. *Egerton,* 21 Wend. 430; *Larned* v. *Bridge,* 17 Pick. 339; *Williams* v. *Conrad,* 30 Barb. 534; *Mott* v. *Ackerman,* 92 N. Y. 553; *Cooke* v. *Platt,* 98 N. Y. 35; *Ward* v. *Ward,* 105 N. Y. 68; *Tracey* v. *Murray,* 49 Mich. 35; *Dunning* v. *Ocean Nat. Bank,* 61 N. Y. 497; 19 Am. Rep. 293; *Tobias* v. *Ketchum,* 32 N. Y. 319; *Simpson* v. *Cook,* 24 Minn. 180; *Stoutenburgh* v. *Moore,* 37 N. J. Eq. 63; *Estate of Besley,* 18 Wis. 455; *Hodgin* v. *Toler,* 30 N. W. Rep. 1; *Creamer* v. *Holbrook,* 11 So. Rep. 830; *Hunt* v. *Hunt,* 11 Nev. 442.)

II.   The statutes of this state relative to probate courts and their jurisdiction were enacted when Montana was a territory.   And the supreme court of the United States, in construing the provisions of the organic act relating to the jurisdiction of territorial courts, held that the territorial legislature had no authority to confer chancery jurisdiction on

probate courts. (*Perris* v. *Higley*, 20 Wall. 375; and see a full discussion of the jurisdiction of probate courts in Montana; *Chadwick* v. *Chadwick*, 6 Mont. 566.) The constitution of Montana (Const., art. 7, § 11) vests the district courts of the state with jurisdiction in probate matters. And the constitution (Const., art. 8, § 11) vests an equitable jurisdiction in the district courts as such. This provision confers upon the district courts the same jurisdiction in equity as that administered by the high court of chancery in England. (*Rosenburg* v. *Frank*, 58 Cal. 400; *People* v. *Davidson*, 30 Cal. 379.) Therefore, if the matters under consideration belong to equity, the district court, sitting as a probate court, would have no jurisdiction whatever. Courts of equity have exclusive jurisdiction in all questions of trusts. (Pomeroy's Equity Jurisprudence, § 1154; and see *Matter of Hawley*, 104 N. Y. 262; *Downer* v. *Downer*, 9 Vt. 231; Wells on Jurisprudence, § 285; Wœrner's Law of Administration, 346; *In re Van Wyck*, 1 Barb. Ch. 565; *Williams* v. *Nichols*, 1 S. W. Rep. 442; *McBride* v. *McIntyre*, 91 Mich. 406; *Creamer* v. *Holbrook*, *supra*; *Harland* v. *Person*, 93 Ala. 273; *King* v. *Jenkins*, 3 Dowl. & R. 41.)

III. The two general purposes of administration are the protection of the rights of creditors and of distributees. (Wœrner's Law of Administration, §§ 199, 432.) When these purposes are wanting, no administration is required. If there are no debts, administration could only be for distribution, and, if, in addition to the nonexistence of debts, the will distributes the estate itself, both purposes disappear and that is the condition of this case. To require administration in such a case would be to place a restriction upon the alienability of property, which is contrary to the policy of the law. (*Winhammer* v. *People*, 13 N. Y. 396; Wœrner's Law of Administration, §§ 7, 9; *Tracy* v. *Murray, supra*.) As illustrating the principle that it is within the power of the testator to place his property beyond the control of the probate court, see *Fallon* v. *Butler*, 21 Cal. 31; *Payne* v. *Payne*, 18 Cal. 292; *Estate of Delaney, supra*; and the following cases are determinative of the proposition that in this case administration was not required: *Wright* v. *Smith*, 19 Nev. 143; *Van Deveer* v. *Alston*,

16 Ala. 494; *Succession of Welch*, 36 La. Ann. 702; *Marshall* v. *Coon*, 29 Ala. 278; *Brandon* v. *Mason*, 1 La. 630; *Begrin* v. *Freeman*, 75 Ind. 398; *Salter* v. *Salter*, 98 Ind. 522; *Holzman* v. *Hibben*, 100 Ind. 338; *Abel* v. *Walworth*, 52 Pa. St. 370; *Taylor* v. *Phillips*, 30 Vt. 238; *Babbitt* v. *Brown*, 32 Vt. 438; *Johnston* v. *Johnston*, 108 N. C. 619; *Patterson* v. *Allen*, 50 Tex. 23; *Flood* v. *Pilgrim*, 32 Wis. 376; 19 Am. & Eng. Ency. of Law, 208; Wœrner's Law of Administration, § 199. "When the residue of the property is taken in trust, the executors, although named as such in the will, are testamentary trustees, and the jurisdiction over them, and of the estate held in trust by them, belongs exclusively to the equity jurisdiction." (*Jasper* v. *Jasper*, 17 Or. 590; and see *Laytin* v. *Davidson*, 95 N. Y. 263.)

IV. Administration should not be allowed, ordinarily, where it would defeat the purpose of a testator as expressed in his will, and in this case such would have been the result of administration. The provisions of section 127 of the Probate Practice Act do not apply where the testator has directed the title and possession in his will. (*Flood* v. *Pilgrim*, *supra*.)

V. Even if there had been creditors they would not have been injured by want of administration, because, under our statutes, all debts are made charges upon the property of the decedent. (See Probate Practice Act, §§ 17, 211, 430.) Where one accepts a devise under a will he thereby becomes personally liable for the special legacies left by the testator. (*Dunn* v. *Dunn*, 66 Cal. 157.)

VI. If administration is not necessary or required in this case, then, of course, the order directing the inventory and appraisal is entirely without jurisdiction, because the inventory and appraisal are only incident to administration, and will stand or fall upon the question as to whether administration is required.

*H. J. Haskell*, and *Ella L. Knowles*, for Respondent.

The order made by the court, being an interlocutory order and not provided by statute, is not appealable. (*Chadwick* v. *Chadwick*, 6 Mont. 566; and see *State* v. *Thurston*, 5 Cal. 518; *De Barry* v. *Lambert*, 10 Cal. 504; *Baker* v. *Baker*, 10 Cal.

527; *People* v. *Ah Fong*, 12 Cal. 425.) In a case like that under consideration, the executors are testamentary trustees. (*In re Valentine's Estate*, 23 N. Y. Supp. 289.) Trust estates will not pass under a general devise, where there is a charge or debts or legacies, or debts and legacies. (*Buffum* v. *Town Council*, 16 R. I. 643.) Every executor is required to make and return a true inventory. (See Probate Practice Act, §§ 118, 120.) The failure to file the inventory and return of appraisement is a breach of duty on the part of the executors, and the district judge in the court below, sitting as a judge to hear and determine probate matters, has full and complete authority to enforce the order herein appealed from. (See *Cranson* v. *Wilsey*, 71 Mich. 359; *Wooden* v. *Kerr*, 91 Mich. 196; *Hall* v. *Cushing*, 9 Pick. 396; *Conky* v. *Dickinson*, 13 Met. 54; *Williams* v. *Cushing*, 34 Me. 370; *Ryan* v. *Kinney*, 2 Mont. 454; *Burton* v. *Capron*, 79 Cal. 490; *Silverbrandt* v. *Widmayer*, 2 Demarest, 263; *In re Pearson*, 98 Cal. 612; *Dougherty* v. *Bartlett*, 100 Cal. 496; *Smith* v. *Westerfield*, 88 Cal. 374; *In re Burton*, 93 Cal. 464.) Every executor must render a full account and a settlement of the estate affected, and the property be turned over to the trustees. (Probate Practice Act, §§ 260, 280, 312.)

Reply brief of appellants.

If the order in this case is final and entered in a proceeding it is appealable. (See Code Civ. Proc., § 421; *In re McFarland's Estate*, 10 Mont. 445; *In re Davis' Estate*, 11 Mont. 1; *In re Kane's Estate*, 12 Mont. 197.) "A judgment is the final determination of the rights of parties in an action or proceeding." (Code Civ. Proc., § 238.) Any final order entered in a proceeding which settles the rights of parties is, therefore, a final judgment. The following authorities are cited as illustrative of what the courts have considered to be final judgments: *Weston* v. *Charleston*, 2 Pet. 449; *Belt* v. *Davis*, 1 Cal. 136; *Starbuck* v. *Dunklee*, 10 Minn. 136; *Kingsley* v. *Gilman*, 12 Minn. 515; *Vermilye* v. *Vermilye*, 18 N. W. Rep. 832; *Mayor etc.* v. *Jessop*, 106 U. S. 563; *Central Trust Co.* v. *Railroad Co.*, 48 Fed. Rep. 850; *Sacramento etc. Co.* v. *Harlan*, 24 Cal. 334; *Zoller* v. *McDonald*, 23 Cal. 136; *Mayberry* v. *Baw-*

*ker*, 14 Nev. 336; *Adams v. Wood*, 18 Cal. 30; *Dwight v. St. John*, 25 N. Y. 203; *Williams v. Morgan*, 111 U. S. 684; *Potter v. Beal*, 50 Fed. Rep. 860; *Horn v. Water Co.*, 18 Cal. 141; *Schloss v. Court*, 29 Pac. Rep. 202; *Pride v. Wyenberg*, 83 Wis. 59; *Finkelstein v. Finkelstein*, 13 Mont. 425; *In re De War's Estate*, 10 Mont. 422; *In re Kane's Estate*, 12 Mont. 197; *Spitley v. Frost*, 15 Fed. Rep. 299; *Garwood v. Garwood*, 29 Cal. 515; *Whitaker v. Sparkman*, 30 Fla. 347; Hayne on New Trial and Appeal, § 184; Elliott on Appellate Procedure, § 75.)    Statutes must be so construed as to maintain a right of appeal, if the established rules of interpretation are not violated. (*Payne v. Davis*, 2 Mont. 381; citing *Appeal of Houghton*, 42 Cal. 45; *Lloyd v. Sullivan*, 9 Mont. 577.)

Hunt, J.—Whether or not the district court exceeded its jurisdiction in making an order requiring the executors of the will of decedent to file an inventory and accounting is the ultimate question to be decided by the court.    But, in reaching a conclusion upon this very important case, it becomes proper to discuss several incidental questions involved: 1. The attitude of appellants towards the court, under the will of decedent; 2. If they are executors, what may the court say must be done by them under the law? 3. To what extent shall their executorial duties go before they may be discharged, if a discharge be necessary at all? 4. If trust duties are imposed by the terms of the will, at what period of time may there be a discharge of appellants as executors, and a distribution to them as trustees? We do not find it necessary to enter into any discussion of the question of what the rights of the appellants may have been had they never qualified as executors; or to discuss at any length exactly what powers were conferred upon them independently of their executorial duties, and the trusts imposed in the performance of such duties.    The appellants stand before the court having been named by the decedent as the executors of his will and testament, and as having voluntarily rendered themselves subject to the jurisdiction of the district court by duly petitioning for the probate of the will, and by duly receiving appointments as executors, according to law.

The will conferred authority upon the appellants to perform

duties within the general powers of executors as such.  It is not claimed, and could not be, we take it, that these executorial powers were illegally assumed, but merely that, although they were assumed by the appellants, still, under the provisions of the will, the title in fee to all of the estate of the decedent passes to and vests in the persons named executors, as trustees, immediately upon the death of the decedent.  It is therefore contended that no inventory need be filed; that no notice to creditors need be given, and that, without proceeding any farther than to probate the will, administration is unnecessary, and not demanded by the laws of the state; that no accounting is required by the executors, as such, and that without any formal order of court, and by operation of the effect of the will itself, the property passed to the trustees.

There are undoubtedly conferred upon the persons named as executors of the will duties and powers properly within the office of trustee, for instance, the direction to invest moneys, and keep the same invested for the joint benefit of the heirs named in the will, and perhaps the direction to provide for the support of the family.  The intention of the testator seems to have been to repose a personal trust in the persons named as executors, but however that may be, it cannot relieve the executors now qualified from proceeding as such, and executing the provisions of the will, subject to the law and the approval of the court.  Charges upon the estate, collecting the assets and keeping them, administration charges, debts, and other expenses may arise.  Under such conditions even a trust estate may not always pass under a general devise. (*Buffum* v. *Town Council*, 16 R. I. 643.)

When the executors of the will qualified, they therefore took upon themselves certain executorial duties.  By section 118 of the Probate Practice Act they are required to make and return to the court a true inventory and appraisement of all of the estate of the decedent, including the homestead, if any, which has come into their possession or knowledge.  This inventory must contain all of the estate of decedent, real and personal, a statement of all debts, partnerships, and other interests, bonds, mortgages, notes, and other securities for the payment of money belonging to decedent, and an account of all

moneys belonging to decedent which have come into the hands
of the executors, and, if none, the fact must be so stated in the
inventory. It is to be observed, too, that so sweeping is the
provision requiring an inventory under our statutes, that
although an appraisement of money is not required, yet "an
inventory must be made" and returned, as in other cases.
The executor must swear to the inventory, and, if property not
included in the first inventory comes into the possession or
knowledge of the executors, they must make another inventory
after the discovery.

The object of the inventory is to show creditors, and other
persons interested, of what the estate may consist. The exec-
utor being chargeable by section 248 in his own account with
the whole of the estate which may come into his possession,
at the value of the appraisement contained in the inventory
(except as especially provided), his responsibility may be gov-
erned and limited by the valuation with which, under this stat-
ute, he is obliged to charge himself. The heirs properly look
to the inventory as essential, in case they institute action against
the executor because of any maladministration on his part, or
any misappropriation of the estate. The authorities regard the
inventory of a decedent's estate as of the highest importance.
It has been held in New York by the surrogate's court that a
will containing a clause dispensing with an inventory was
invalid so far as such a clause might operate to relieve the
executor of complying with the law requiring him to file an
inventory. The question arose in an estate involving a very
large fortune. But the surrogate decided that it was against
public policy "to permit such interference with the forms of
procedure established by law, or to remove the barriers designed
to protect estates from misappropriation. The safety, preser-
vation, and honest distribution of the decedent's estate require
that provisions like the one in question should be declared
invalid and of no effect." (*Will of Potter*, 3 Demarest, 108.)

"It is the basis upon which the representative makes his
accounts; it shows the amount for which he is chargeable, and
limits presumptively his responsibility, except for increments,
income, and such assets not therein appraised, through igno-
rance, inadvertence, or other cause as may come afterwards to

his hands. On the other hand, the heirs and other parties interested have, in the recorded inventory, the best evidence possible, under the circumstances, of the assets, their condition and value as they came to the representative's possession and knowledge at the outset of his administration, and supplies them with essential evidence, in case it becomes necessary to institute proceedings against him, or oppose the allowance of his accounts because of negligence or misconduct while invested with his responsible office." (Schouler's Executors and Administrators, § 237.)

By our laws, too, the possession of realty passes to the executor, who is authorized to collect rents, "until the estate is settled, or until delivered over to the heirs or devisees." The right to maintain an action for the possession of real estate is conferred upon the executor, who may act in such suit with or without the heirs or devisees.

The supreme court, in *Black* v. *Story*, 7 Mont. 238, decided that under the statutes quoted above, and others of the Probate Practice Act, ejectment would lie against mere trespassers for the possession of realty of a decedent when brought by his administrator.

By section 83 of the Probate Practice Act, where it is expressly provided in the will that no bond shall be required, sales of real estate may be made and confirmed, without any bond, unless the court, for good cause, require one to be executed. The right of the court, however, to demand this bond is unquestionable, and conforms with the policy of the probate laws of the state, which enable the court to exercise a supervision over the affairs of the estate, lest because "of some change in the situation or circumstances of the executor, or for other sufficient cause," the rights of those interested may be endangered.

Section 88 gives the court, upon a showing made on oath that the executor is wasting the property of the estate, the authority to suspend an executor's powers until the application to require him to give bond is determined. This power of the court may be exercised where, by the terms of the will, no bond was originally required, and is to be invoked by the probate judge himself, without any application, when it comes to his

knowledge that the bond, if one is given, is insufficient. His letters may be revoked if he fails to give new sureties, and all his powers taken away from him.

In passing upon the right of possession of realty conferred upon an executor, Field, C. J., in *Weeks* v. *Hahn*, 20 Cal. 621 (1862), held that under the code of California, which contained at that time a provision similar to section 127 of the Montana Probate Practice Act, that although the estate of an intestate descended to the heirs, subject to the payment of his debts, "yet this provision must be read in connection with the clauses of the other statutes to which we have referred, which place the right of present possession in the administrator;" and that such right of possession remained in the executor until the estate was settled, or delivered over to the heirs by order of the probate court. And the court conclude that, under the statutes of California, which are substantially like ours, " the right to the possession of the real property of an intestate remains exclusively with the administrator until the estate is settled, or distribution is directed by order of the probate court."

The supreme court of Nevada in *Gossage* v. *Crown Point M. Co.*, 14 Nev. 153 (1879), discussing the possession of realty by an administrator, as given by a statute similar to that of this state, held that such possession "is for the benefit of the creditors and the heirs," and for the purposes of administration. The court, quoting from the case of *Bufford* v. *Holliman*, 10 Tex. 575, say: "By law the whole of an estate vests in the heirs testate or *ab intesto*, at the death of a person deceased. It passes from them *sub modo* for the purposes of administration, and the administration is required to be speedy, so that the remainder, if any, may be returned to its real owners, the heirs."

The plaintiffs in that case brought ejectment, alleging that the first administrator had rendered his final account, that all the debts had been paid, that the second administrator had left the state of Nevada, and that the administrator appointed in his place had declined to commence any suit to protect the rights of the plaintiffs, and waived all rights which he might have as such administrator. Under such peculiar facts the

court held that the heirs might maintain the suit in their own name, and although the right of possession of the realty is conceded, in the opinion, to have been exclusively in the administrator until settlement of the estate, yet, as the heirs alone would be benefited or injured by the result of the suit, the facts warranted their being held to be the real parties in interest.

We are cited by appellants to *Flood* v. *Pilgrim*, 32 Wis. 376, but in that case the real estate devised had passed into the possession of the devisees thereof and those claiming under them. The executor of the will did not qualify. There was no estate whatever at the time that the plaintiff was appointed administrator of the estate of the decedent, nine years after his death. There were no debts. The court held that the administrator had no right to sue to establish the title of the devisees as against the defendant, and that the statutes which conferred the right of possession of the realty upon the administrator only applied where there was an estate. The case does not apply to the case at bar, where there is an estate, and where executors have qualified, and where the devisees do not appear to have parted with their title. It is fair to say, too, that the opinion cites no authorities, and, apart from its applicability to the particular facts, is entitled to but little weight.

Again, the executors are required to publish a notice to creditors. This requirement, the books say, is engrafted upon our Probate Practice Act in pursuance of the practice of English chancery courts, where notices were issued requiring creditors to file their claims with the executor within a certain time. Under section 147 of the statutes the notice in this case, assuming the estate exceeds in value ten thousand dollars, would be ten months from the date of the first publication. By section 153, when a claim is presented to an executor he must indorse thereon his allowance or rejection, and thereafter he must present the claim to the probate judge, who must allow or reject the same. And the only way by which creditors may secure recognition of their just claims, except where they are without the state, is by proceeding in the manner just outlined. The creditor cannot maintain his suit, under section 157, against an estate, unless he has presented the claim to the executor. And, by section 150, if the claim be one arising

upon a contract, unless presented within the time limited in notice, it is barred forever, except under particular conditions.

We are at a loss to see how the *ex parte* affidavits of Mrs· Higgins, and others interested in this particular estate, to the effect that there are no debts, can be sufficient proof to enable a court in a judicial decree to find the fact to be as stated by the affiants. Creditors have never had the requisite notice. They have not been obliged to present their claims, and, as the law gives them ten months after the first publication to file them, we think that until that time has elapsed there cannot be enough proof upon which to base a final decree that there are no debts.

This notice to the creditors is regarded as a reasonably certain way of reaching creditors, and enables the court to exercise jurisdiction over the estate in protecting the interests of those concerned. How is it known that there are no debts? And upon what is the court to now base an order to that effect? Creditors have a right to rely upon a compliance with the statutes by executors, and may rest secure in that reliance under the belief that, the property being in the possession of the executor, the estate is held for the payment of debts of the testator, as well as legacies and devises.

Passing on to investigate the method by which the duties of appellants as executors may cease, and their duties as trustees may begin, we will examine the decisions bearing upon this subject.

*Hall* v. *Cushing*, 9 Pick. 395 (1830), in discussing the liability upon a probate bond, the supreme court of Massachusetts uses this language: "The defendants' counsel contend 'that the office of executor (so far as the law furnishes other security than the personal responsibility of the executor for the faithful performance of its duties) consists in the care of the funeral, in the probate of the will, in the payment of debts, and the payment of or assent to legacies; and ceases when the residue is paid over to the legatees, or a transmutation of property is effected by the act of the executor, or by the operation of law.' We think, however, very clearly, that the duties of an executor are not confined within such narrow limits. There are other important duties which devolve upon him, the performance of

which is intended to be secured by his official bond. He is required to keep the property of the testator, while remaining in his hands as assets, without suffering it to be wasted, and to account for it under oath, when cited by the probate court for that purpose; and, if he fails in either of these particulars, it will amount to unfaithful administration and a forfeiture of his bond. Or if he neglects to object to claims against the estate which cannot be recovered by law (as in the case of *Parsons* v. *Mills*, 1 Mass. 431; 2 Mass. 80), or if judgment be recovered against him on a suggestion of waste, the judgment creditor will be entitled to a remedy against him on his probate bond. (*Fay* v. *Bradley*, 1 Pick. 194.) . . . . And, again, before there could be any transmutation of property, as contended by defendants' counsel, the executor must have settled his final account of administration in the court of probate, in which the balance due from him as executor should be allowed to his credit, as being retained by him in his capacity as trustee for the minor children."

In *Newcomb* v. *Williams*, 50 Mass. 525, decided in 1845 by Shaw, C. J., in an action of debt on a probate bond, where a will appointed R., one of the executors, " a trustee of all his property, except so much as the executor will require to pay debts and expenses, to take full possession, and keep it at interest, to apply the income of a part to the support of his mother, and, subject to that appropriation, to pay over the residue to his nephews," that truly learned judge goes on to say:

" Now it is argued that as the testator has the *jus disponendi*, and did direct the property, immediately after his decease, to go into the exclusive possession of the trustee, it was rightly disposed of according to the will, and the executors, as such, had no further control over it, and were no longer responsible for it. This argument is plausible, but we think it is fallacious, and founded on a misconception of the powers of the testator, and the relative rights and duties of an executor and a trustee. It is not legally correct to say that a testator has the *jus disponendi* of his property; it is true only *sub modo*. The executor, as such, is bound to administer the whole estate, as well that not given by the will as that embraced

in it. (*Hays* v. *Jackson*, 6 Mass. 149.) The first claim on the estate is that of creditors; and it cannot be known until an inventory is returned and an account settled, whether the whole estate will not be necessary for the payment of debts. So children, or their issue, who have no share given them, and posthumous children, are entitled to the same distributive shares which they would be entitled to if the estate were intestate. These claims are paramount to those of legatees, and no disposing power of the testator can defeat them. To meet these claims, and to enable the executors to perform the trust which the law devolves upon them, the whole property must, in the first instance, come to them, and be disposed of in an orderly course of administration, which the testator cannot control. For this purpose, it is an established rule of law that all the personal property of the testator vests in the executors, for some purposes before probate of the will; but to all intents and purposes, upon its probate. This they take, not merely as donees, by force of the gift, as *inter vivos*, but by operation of the rules of law controlling, regulating, and giving effect to wills. A trustee, therefore, who is but a legatee, can take only through the executors. If a testator were to appoint no executor, or direct that the estate should go immediately into the hands of legatees, or of one or more trustees, for particular purposes, such direction would be nugatory and void; and, it being a will in which no executor is appointed, it would be the duty of the judge of probate to appoint an administrator with the will annexed, who would have all the powers of an executor, and in whom all the personal property would vest. (Rev. Stats., c. 63, § 1.) Being of opinion that, by this will and the acts done under it, the executors became jointly possessed of the personal property, and responsible for it, we are then to consider whether the taking of it by one of them, who was also sole trustee, under the circumstances stated, discharges the executors. When the executors and the trustees are different persons there is no difficulty; nothing but an actual payment to the trustees, by the executors, will discharge them. So, if the trust is cast upon them as executors, the execution of such trust is a duty superadded to their official duties as executors, and, until they qualify themselves and assume to

act in their separate capacity as trustees, the bond to perform their duties as executors binds themselves and their sureties to the execution of such trust. (*Hall* v. *Cushing*, 9 Pick. 395; *Door* v. *Wainwright*, 13 Pick. 328; *Towne* v. *Ammidown*, 20 Pick. 535.) What would amount to such change of capacity, when the same persons are executors and trustees, so as to exonerate the sureties on the executorship bond, would depend on circumstances. If, by the constitution of the trust, they were exempted from giving bonds, as they may be (Rev. Stats., c. 69, § 2), it would probably be held sufficient—as no actual payment can be made to one's self—to show, by any authoritative and notorious act, that they had elected to act in the capacity of trustees; as, for instance, if they claim a credit in their executorship account filed in the probate office for a sum held by themselves as trustees, and also file an inventory or account, charging themselves with the like sum as trustees. (*Hall* v. *Cushing, supra.*) But, when a bond to the judge of probate is required, such transmutation of the property cannot be complete, so as to discharge the executors, until such bond has been given. (Rev. Stats., c. 69, § 1.) And we think the same rule applies when one of the executors is himself trustee. Such charge in the one capacity, and claim to be discharged in the other, would avail if no bond were required."

In *Prior* v. *Talbot*, 10 Cush. 1 (1852), Prior was appointed executor and trustee of his father's will, and was directed to set apart a certain part of the estate and invest the money, and to appropriate the income to the widow for life, and upon her death to distribute the principal. Prior qualified as executor and invested certain moneys for the widow, which were repaid him. He used these funds and became insolvent afterwards. In filing his accounts in the probate court as executor he did not charge himself with certain of the funds set apart for the widow. The court decided that the appointment of Prior as executor imposed a duty upon him to retain the principal fund and invest it, and that he was responsible until he discharged himself of the implied trust. "Here," continued the court, "he was appointed executor and trustee. If, for greater convenience, he wishes to close his account as executor, and open a new account as trustee, he must give bond in the capacity

of trustee, and charge himself in one capacity, *eo instanti*, and by the same act by which he claims his discharge in the other."

*Miller* v. *Congdon*, reported in 14 Gray, 114 (1859), bears closely upon the contention of the appellants in the case at bar. Miller and wife sued to recover the unpaid balance of a legacy bequeathed to Mrs. Miller by the will of Pelag Clark, her father. Congdon was executor. Judge Hoar, speaking for the court, said: "It has also been held that, where the executor is thus entitled to act in a double capacity, he will be required to account in his capacity of executor, and the sureties in his bond as executor will be liable for the faithful discharge of his duties as trustee, unless, for greater convenience, and with the assent of the judge of probate, he chooses to open a new account as trustee, in which event he must give a new bond as trustee, and transfer to his account as trustee the property to be held and administered by him in that character, before his liability as executor will terminate."

It was argued in the case just cited, that the executor who, in good faith, in his own mind, set apart and appropriated a promissory note for a thousand dollars as a part of the fund for the payment of legacies to the plaintiff, performed sufficient acts to effect such an appropriation as to satisfy the law. No settlement of his account as executor had ever been made in the probate office, and no proceedings were ever had in relation to his appointment as trustee other than by his qualification as executor. He had been appointed guardian of the plaintiff, but never had made or kept an account of the funds in his hands as such guardian. It appeared that *"he did, in his own mind, set apart and appropriate* the said promissory note for one thousand dollars of the Vermont Railroad Company, mentioned and specified in his said answer, *to be and constitute a part of the fund for the payment of the said legacies to the plaintiff,* and that, from and after that time when he so determined to set apart and apply the said promissory note for that purpose, he always kept and retained the said note, together with the said bond taken as collateral security for the payment thereof, as a part of the fund belonging to her, as for the payment of the legacies due to her; and that he kept and retained the same for no other purpose, and with no other intent whatever. But he never

made any entry of said note on any book or on any account, and had kept no account of the assets of which the said fund was composed, or was to consist; and the said promissory note constituted a part of said fund, and was appropriated solely to the payment of said legacies to the plaintiff, only by the said determination to this effect in his own mind as aforesaid.   He further testified, 'that he had never made any settlement of his account, or rendered any account of his proceedings as executor as aforesaid, in the probate office; that no legal proceedings had ever been had in relation to his appointment as trustee of plaintiff, otherwise than by his appointment to, and acceptance of, his said office of executor; that he had been duly appointed as guardian of the plaintiff, but that he had never kept or made any account of funds or property in his hands as such guardian.' . . . . But the court are of opinion that it still remains their duty to determine whether the appropriation to which he testifies is such an appropriation as the law requires, in order to produce that result.   The executor did no act whatever to effect such an appropriation, or transmute the property.   Giving the fullest effect to his testimony, all that he did was 'in his own mind.'   In our judgment this is not an appropriation which the law will recognize.   To produce such an important change in the rights of parties there should certainly be some decisive, intelligible, and irrevocable act; and a mere purpose, or mental determination, is not sufficient. However respectable and trustworthy this defendant may be, the rules of law in reference to the administration of trusts must be so applied as to afford some reasonable protection against men who are not honest.   If the executor had died, or if the investment he had made of the money had been in property which had increased in value, what security would there have been for the rights of the beneficiary?"

The court further on uses the following language: "No authority has been found or suggested which sustains this defense, and we cannot recognize or adopt the doctrine upon which it rests."

This case, based upon the principle that some act of appropriation is necessary other than a mere holding of the property and intention that it shall constitute a trust fund, is

approvingly cited in the recent case of *Sheffield* v. *Parker*, 158 Mass. 330.

In *Daggett* v. *White*, 128 Mass. 398 (1880), where John Daggett was appointed executor, and there were no duties imposed upon him as executor beyond the duty of paying debts and settling the estate, but where, after his duties as executor were performed, the remainder of the estate was bequeathed and devised to him in trust, for the use and benefit of certain parties named in the will, it was decided that the testator intended to give "a distinct and independent character to the trustee thus named, and to impose upon him duties and powers in no manner connected with his duties as executor," and the act of the probate court was affirmed in requiring him, if he wished to close out his account as executor and take upon himself the duties of a trustee, to give bond in the latter capacity, and that there was no merger of the two offices in him.

In *White* v. *Ditson*, 140 Mass. 351 (1885), discussing the liability of the sureties on an executor's bond, the court says: "While Healy fully completed the administration of the estate by the payment of all debts, legacies, and expenses, he settled no final account as executor, and did not, by any open and notorious act, discharge himself as such in the probate court by assuming to transfer the residue of the property to himself as trustee, or by any other act indicating an intention thereafter to hold the same for the purposes of trust. The will gave to him two characters, those of executor and trustee; and the duties of the latter character were entirely distinct from and independent of those of the former. As actual payment cannot be made by one to himself, it has been held that, where the same person is executor and trustee, he must give bond in his character of trustee before he can exonerate himself from his liability as executor."

It was further said that, "Even if this were a case where the trustee might be, and was by the will, exempted from giving bond, we should not be prepared to say that the facts that Healy ceased at a certain time to do any acts as executor—all that was necessary in that capacity being then completed—and thereafter did certain acts showing an intention to execute the

trust, were alone sufficient, without any settlement of his account as executor in the probate court, to exonerate him and the sureties on his bond as executor. There should, in that case, be some public act, which could only take place in that court, indicating a discharge of himself in one capacity, and the acceptance of the trust imposed upon him in the other, before this transfer could take place. (*Newcomb* v. *Williams, ubi supra.*) This might perhaps be by any definite act assented to by that court, as where an executor, who had been appointed trustee, and had also qualified as such, charged himself in his account as executor with money paid to himself as trustee, which account had been allowed."

In *Crocker* v. *Dillo*, 133 Mass. 91 (1882), it was held that "where the same person is named both as executor and trustee under a will, and the same hand is to pay and receive the money, there can be no evidence of the actual transfer of the property from himself in one capacity to himself in another, except from some declaration or authoritative and notorious act on his part showing a change in the manner in which the property is held. And an executor who is also trustee under a will cannot be considered as holding any part of the assets in the latter capacity until he has settled an account in the probate court as executor, in which he is credited as executor with the amount which he holds as trustee; and such account should not be allowed by the judge of probate, without requiring him to give bond for the faithful performance of his duties as trustee."

We find the same principle laid down in *Williams,* v. *Cushing,* 34 Me. 370 (1852), where the court decided that the duties of the executor and trustee are similar and distinct. "They may be conferred upon and performed by one and the same or different individuals, as the testator shall deem expedient. . . . . Whether the executor and trustee is or is not the same is immaterial. Legally they are to be viewed as equally distinct, whether these trusts are held by one or more." Cushing, defendant in that case, was appointed executor and trustee under the will, but never gave bonds as trustee. More than a year after he became executor, and all debts were paid, he balanced his accounts in the probate court, and a trustee was appointed. It was decided that the amount due by him as executor prop-

erly remained in his hands until he rendered an account show-
ing that the payments had been made to the trustee, whether
the trustee be the executor or some one else.

In *Deering* v. *Adams*, 37 Me. 264, construing a will,
Appleton, J., for the court, said: "The duties of executors and
trustees are separate and distinct, and separate and distinct
bonds must be given. The bonds given by executors will not
protect the estate against the nonfeasance or misfeasance of the
trustee, though they be the same individuals."

The supreme court of South Carolina, in *Anderson* v. *Earle*,
9 S. C. 460 (1877), held that where the same person was
executor and trustee, and by a statement of the accounts as
executor a credit was given for a legacy which could only have
been paid by him as executor to the trustee, it was a necessary
inference that by such entry the executor intended to transfer
the amount from his liability as executor to his liability as
trustee, and that of itself would be a sufficient circumstance
to show that he had accepted the trust. The court say, quot-
ing with approval, "where the same person is appointed both
executor and trustee it is difficult, though sometimes of im-
portance, to determine when the office of executor has ceased
and that of trustee has commenced. The rule appears to be
that, if a part of the assets have been clearly set apart and
appropriated by the executor to answer a particular trust,
he will be considered to hold the fund as trustee for those
trusts, and no longer as mere executor."

It is to be observed, however, that the inference drawn by
the court was held only to be a necessary one after the execu-
tor had filed his accounts, and had set apart assets for the par-
ticular trust involved.

The circuit court of the United States for Connecticut, in
*Parsons* v. *Lyman*, 5 Blatchf. 170 (1863), took a similar view
of the necessity of separating the two relations, that of a trus-
tee separate from that of executor, by some formal act. Sam-
uel Parsons died, leaving a will, with defendants named as
executors. They qualified and proceeded to settle the estate in
the probate court. One year after testator's death the execu-
tors substantially completed their duties by adjusting their

accounts, "after due notice of the time and place of hearing to all parties interested, according to law."

The will, however, after certain bequests, provided that "the residue of my estate . . . . I give, devise, and bequeath to my executors hereinafter named . . . . in trust."

Judge Shipman says: "It will be seen, from this statement, that the defendants sustained two relations to the will and the estate of the deceased, namely, that of executors, and that of trustees.     As executors it was their duty to prove the will, to give the requisite bond, with the aid of appraisers to prepare and file an inventory, to pay the funeral expenses and debts of the deceased, and the disbursements necessary in the progress of administration, and to perform all that the law requires of those who administer on testate estates, including the final settlement of their accounts in the court where all their proceedings were had.     All these duties the defendants, as executors, performed, the last one being completed on the 20th of November, 1849, when their accounts as executors were adjusted, and substantially closed."     And further on again: "For, as already intimated, I hold that the relation of the defendants to this trust estate, as trustees, is the same as if they had not been named as executors in the will, and the property had been devised and bequeathed to them in trust by their individual names.     It would, of course, have been competent for the testator to confer this trust upon them by his will, and still name any other person as sole executor of the latter.     In that case there would have been no clashing of duties and powers between such executor and the trustees. The duties and powers of the latter would have begun where those of the former ended.     And, although the defendants are appointed by the will to act in both capacities, this fact does not obliterate the distinction which the law makes between the duties and powers that pertain to these respective offices.     The defendants seem to have properly recognized this distinction, by filing in the court of probate, since the settlement of their executors' account, an annual account, at first voluntarily, and, since 1853, in accordance with a statute of Connecticut relating solely to guardians of minors, conservators, and trustees of estates."

In *Probate Court* v. *Hazzard*, 13 R. I. 1, in an action against an administrator's bond for neglect to act, it was held that the executor was obliged to retain his representative functions, and was liable to an accounting until released by some appropriate act, and that his mere mental determination, without any "overt act" was not sufficient. (See also *Probate Court* v. *Angell*, 16 R. I. 495.)

In *Wilson* v. *Wilson*, 17 Ohio St. 150, an administrator showed by his final accounts that he had certain moneys belonging to the devisees under the will. The administrator was the guardian of the devisees, who were infants. In a suit upon his bond as administrator he set up that he held the fund as guardian. The court held that he might demonstrate in which capacity he held the money by charging himself with the money in his account as guardian and crediting himself with having made payment of it to the guardian in his account as administrator. He refrained from doing this, however, and he was held liable as administrator.

In *Cranson* v. *Wiltsie*, 71 Mich. 356, suit was brought on an executor's bond. The executors were directed to invest and reinvest certain moneys, and to educate children, for many years after the death of the testator. Suit was commenced to require the executors to account, and to file a new bond. They failed to respond, and were removed. The circuit court found that the executors had failed to invest the funds, as required by the will, but held that after an order of distribution, which had been made some fifteen years before the suit was instituted, the executors held the estate, not officially as executors, but as donees of a power in trust. Campbell, J., speaking for the court, says: "We do not think the conclusions of law are correct. An order of distribution alone cannot discharge executors until the estate is distributed. The Rheubottom children could not take the property, and, inasmuch as their interest was contingent, no one else could take it for them. The will required it to be invested by the executors. If the property had been invested in real-estate securities, as required, the question might have arisen whether this was not equivalent to such a compliance with the order of distribution as would have changed the nature of their holding.

Upon this question we express no opinion. It is at least a doubtful proposition. But we think it is a dangerous and incorrect doctrine that executors can discharge themselves of their official responsibility without doing some act to change the character of their holding, and place the fund safely where it ought to be."

In a very recent case, *Wooden* v. *Kerr*, 91 Mich. 188, the converse of the doctrine laid down in the foregoing authorities is apparent. Plaintiff commenced an equitable action for an accounting by defendant as trustee. The will gave, devised, and bequeathed to defendant and his son the residue and remainder of decedent's property, in trust, to collect rents, make investments, educate children, and, eventually, to transfer the whole property. The executors filed a bond and an inventory, and one of them remained in possession for some years. Accounts were filed, but the last one, in 1886, was disallowed. The court held that the defendant was a trustee, and that he was estopped to assert that he was an executor merely and not a trustee, and that, if they had considered themselves executors merely, it might be presumed that they would long ago have settled up the estate and turned the property over to themselves as trustees, and that equity would not permit the defendant to refuse an accounting as trustee because the will which made him a trustee also made him an executor, in which latter capacity he neglected for several years to render an account, and the court take care to say that a settlement between two administrators could neither bind the estate nor the complainant, and the probate court alone possesses the power to allow Kerr's account as executor and discharge his bond.

Text-writers have deduced from the decisions of the courts the rule that if the same person is named as executor and also as trustee under a will, as executor he is chargeable until he gives bond as trustee (unless exempted from giving bond), and settles his account of his administration, and charges himself as trustee. (Gary's Probate Law, § 741; Crosswell on Executors and Administrators, § 725.)

" If a testator in his will appoint his executor to be a trustee, it is as if different persons had been appointed to each office; a

court of equity cannot remove him from the executorship, for
courts of probate have exclusive jurisdiction over the appoint-
ment and removal of administrators and executors; but, if the
office of trustee is separate from and independent of the office
of executor, a court of equity may remove him from the office
of trustee, and leave him to act as executor; or if he has com-
pleted his duties as executor, and is holding and administering
the estate simply as trustee, a court of equity may remove
him." (Perry on Trusts, 4th ed., § 281.)

The quotations in the several cases quoted throughout this
opinion proceed in part upon the premise that bonds are to be
given by an executor, and that a liability must still exist upon
such bonds until a trust bond is given. But the principle of
preserving the distinction between the true relation is always
noted, and, under the system of the probate laws of this state,
and the general legal doctrine to be applied, there can be no
release from the executorial trust, except by the authority of
the probate court.

Many of the cases relied upon by the appellants are suits
for constructions of wills where estates are bequeathed or de-
vised to testamentary trustees, recognized by the laws of such
states, and in many instances, notably New York, from states
where an executor has nothing to do with real estate. Realty
in New York passes directly to the heirs, and is not subject
generally to any right of possession by executors or adminis-
trators, as such. (2 N. Y. Rev. Stats., § 6.) The case, there-
fore, of *Conkling* v. *Egerton*, 31 Wend. 429, cannot control
upon the necessity for an accounting, to the exclusion of our
statutes, where executors have qualified.

*Larned* v. *Bridge*, 17 Pick. 239, was a bequest by the tes-
tator to his wife of the use and benefit of the estate, and, should
the income be insufficient for her support, she could dispose
of so much thereof as was necessary for that purpose, and at
her death the remainder was to be equally divided among tes-
tator's children. An administrator with the will annexed was
appointed. The widow died. Authority was given the ad-
ministrator to sell and dispose of sufficient real estate to reim-
burse certain sums paid as debts for the comfortable support
of the widow in her lifetime. Shaw, C. J., regards the

provision in the will as a gift to the widow of the use of the property, and that although the widow had once been executrix, yet, as she never acted, the power granted under the terms of the will was one given to her personally and was not to be considered as bestowed upon her as an executrix exclusively. The whole case is really favorable to the view we take of the authority of the executors under the Higgins will, as it is said "there is no doubt that where a power is conferred upon an executor as such, and where the execution of such power is necessary to the purposes of the will which are to be accomplished by the officer, it is to be considered as a power to the officer as such, and not to the person named as executor exclusively, as where legacies are given and the executor is bound and directed to raise money to pay them by sale of the real estate."

*Simpkins* v. *Cook*, 24 Minn. 180, was an action to set aside a conveyance and construe a will. The court declined to consider whether the executor was properly discharged, because the point was raised by a collateral attack, and decided that, under the words of the will, the trusts to be executed by O. as executor were personal to him and not part of his office.

In *Estate of De Laney*, 49 Cal. 78, a final distribution was ordered by the probate court. In an appeal from such order the court held that conveyances which had been made by the executors were not required to be confirmed. The necessity for an accounting by the executors, as such, was not passed upon, because they did account.

*Begien* v. *Freeman*, 75 Ind. 398, and several other cases cited, simply hold that an heir may sue a creditor where no administrator has been appointed, and where there are no debts. They are inapplicable to a case where jurisdiction has attached by the qualification of executors.

*Taylor* v. *Phillips*, 30 Vt. 238, was an action in assumpsit on a note given by defendant to the sons of the intestate in settlement of the mutual debts between the intestate and defendant. At the time the note was given there was no administrator. The court held the suit could be maintained, but expressly decided that if the defendant had been called upon

by an administrator " the case would have merited a different consideration."

In *Patterson* v. *Allen*, 50 Tex. 223, there was no administrator, and under the statutes of that state settlements between heirs are expressly recognized.

We proceed finally to inquire into a method by which the executors, after they have performed their duties as such, may be relieved of their trust, and qualify as trustees under the will. The court agree with the position of appellant's counsel that there is no jurisdiction in the district court sitting in probate matters to require trustees, not executors, to account. A court of equity alone can do that. Under the rule recognized in the case of *Chadwick* v. *Chadwick*, 6 Mont. 566, the jurisdiction of the probate court is limited to the powers conferred upon it by statute, that is, to the control of the " administration of decedents' estates, the supervision of the guardianship of the infants, the control of their property, the allotment of dower, and 'other powers pertaining to the same general subject." What construction may be placed upon the powers conferred upon testamentary trustees where a trust has been created by a will to continue after distribution, as provided by article V, section 2900, of the Code of Civil Procedure, just adopted, is not material to the present inquiry. But even under the strictest limitations of the jurisdiction over the estates of decedents, and the control of the executors, we find that by our statutes the probate court may ordinarily exercise functions necessary to settle an estate, and to order a distribution thereof to those entitled to share therein under a will.

The accounting by the executor which must precede the settlement of his accounts is guarded by strict statutes (Probate Practice Act, §§ 254, 256, 260, 263, et seq.) The executor cannot profit by his trust except as provided by law (§ 253); but if he does wrong or commits serious mistakes he may lose. The whole scope of the Probate Practice Act of the state contemplates that an executor in the performance of his trust shall be subjected to legal checks and guards placed upon him "at each step he takes, and this from the beginning." There are provisions in some states, Michigan being one, which release a residuary legatee from filing an inventory, provided he give

bond to pay the debts of the legacies, but, in the absence of such a statute, even a residuary legatee, if he be an executor, would be held to the same degree of care and the same accountability which are imposed upon other executors. (*Hathaway* v. *Weeks*, 34 Mich. 237.)

By section 515 the title in a specified devise or legacy passes by the will, but in such cases possession can only be obtained from the personal representative. When considered with relation to our entire system of probate laws concerning the settlement of estates of deceased persons, this recognition that possession can only come from an executor of a will is but one of the demonstrations of the restrictions or qualifications which Chief Justice Shaw had in mind in the use of the words *sub modo*, in *Newcomb* v. *Williams*, *supra*.

In *Clark* v. *Clay*, 31 N. H. 393, where the court required an administrator to produce his accounts and vouchers, it was held that although all parties interested could settle an estate without resorting to the forms of law, yet, where legal course was taken, it is for the judge to say whether he will be governed by what the parties do or do not; and, where an administrator offered a certificate of the heir as conclusive of the correctness of a settlement, and the court declined to enter into a decree, such action of the court was sustained upon the ground that the judge "might very properly decline to pass the decree without an examination of the accounts and vouchers."

The court may *sua sponte* require a periodical accounting at any time. (Wœrner's Law of Administration, § 501; *Reynolds* v. *People*, 55 Ill. 328.)

Justice Harwood, in speaking for the court in *In re McFarland's Estate*, 10 Mont. 586, said: "The heirs of decedent, and all legatees, devisees, creditors, guardians, and others who may be in any way interested in an estate, and their counsel, have a right to presume that the requirements of the statutes will be fulfilled in the administration thereof; and they have a right to presume that no final distribution thereof will be made until such intermediate proceedings have been had, and the period fixed by statute for the distribution has arrived, and such interested parties have a right to the time provided

by law for the orderly procedure in the administration of an estate, or the execution of a will, to appear and make a showing of their claims or interests."

In this particular estate the executors, having qualified, must take charge of the estate; proceed with the inventory, and give the notice to creditors. They must also act upon any claim presented, as required by the statutes hereinbefore cited. If the court requires an exhibit for its information, by section 254, such a document must be filed, showing the amount of all claims presented, "and all other matters necessary to show the condition of the estate's affairs." Full account of the executors, with vouchers, must be rendered. If it is not, ample means of requiring it, even to issuing an attachment, and, it would seem, committing the delinquent executors, are provided for by sections 260, 261, 262, et seq., of the Probate Practice Act. Distribution is contemplated and fully provided for upon the final settlement of the accounts of the executors, but, until such final accounts have been settled and allowed, no authority is given to distribute the residue of the estate in the hands of the executors. The way seems clear and simple by which, under the law, the devisees, legatees, and trustees may become possessed of the estate of the decedent, devised and bequeathed to them under the terms of the will. There is one way only by which there may be even a partial distribution prior to such final accounts, that is, under sections 284, 285, et seq., where, after the lapse of four months, those entitled to share in the estate may, if it appears to the court that the estate is but little indebted, and the creditors are safe, receive their shares, provided the requisite bond is given.

The duties of the executors precedent to discharge are plainly to account, to obtain an order settling their accounts, to obtain an order of distribution, and to deliver up, under order of the court, to parties entitled to share under the will. (Probate Practice Act, § 312.)

After full consideration of the general and statutory law relating to this case, and the policy and the reason of our entire probate system, our conclusions, as applicable to large estates, may be summarized as follows:

1. Executors, when qualified as such, are subject to the

jurisdiction of the district court sitting in the exercise of its probate powers.

2. The duties of such executors are to proceed with the performance of their executorial duties, as imposed upon them by the laws of the state, having due regard to the provisions of the will of the decedent.

3. Executors must account, and executorial responsibilities can only terminate after compliance with the statutes, and after a settlement approved by the court has been made, and after a distribution and a delivery up have been ordered by the court.

4. Where trust duties are imposed upon trustees as devisees and legatees under a will, such duties cannot properly be assumed by the same persons who were named as executors under the will, and who have qualified as such executors, until the court has approved their accounts and ordered a distribution of the estate, in which order the executors may be directed to credit their accounts as executors with so much of the estate as may be ordered transmitted to their accounts as trustees, or are otherwise authorized by the court to transfer the residue of the estate in their hands as executors to themselves as trustees.

The district court must have determined that the right of possession of the property of the intestate was in the appellants as executors, after they qualified as such. The decision of that question involved the further point of whether administration was necessary. It was decided it was. We therefore think that the order became final as against these appellants, upon the questions necessarily involved in that proceeding, and could be appealed from. (*In re McFarland's Estate*, 10 Mont. 446.)

The order of the district court overruling the motion of the executors to quash and set aside the order made requiring said executors to prepare and file a full and complete inventory and appraisement of the estate of decedent, which has come into their hands as executors, is affirmed.

*Affirmed.*

DE WITT, J., concurs.