## MEARS V. SMITH *et al.*

1. Under Probate Code, §§ 147, 242, making it the duty of the executor. or administrator to take possession of all the property of. a decedent, and collect all debts due the estate, an action cannot be maintained on a note by the heir of the deceased indorsee without proof by the probate records that he is owner of the note as distributee.

2. Code Civ. Proc. § 529, provides that copies of the records of judicial proceedings in the court of any state or territory shall be admissible in evidence in all cases in this state when attested, etc. Held, that probate proceedings in another state, by which plaintiff in an action on a note is owner of such note, can be shown only by an attested copy of such proceedings, and parole evidence thereof is inadmissible.

(Opinion filed January 25, 1905.)

Appeal from circuit court, Minnehaha county; Hon. FRANK B. SMITH, Judge.

Action by J W. Mears against E. L. Smith and another. From a judgment for defendant Smith, plaintiff appeals. Affirmed.

*Joe Kirby*, for appellant.

*Boyce & Warren* and *A. B. Kittredge*, for respondents.

CORSON, P. J. This is an appeal by the plaintiff from a judgment entered upon a directed verdict in favor of the defendant Smith. The action was brought upon a promissory note which reads as follows: "$600.00. Sioux Falls, D. T., Dec. 4th, 1888. On or before one year after date I promise to pay to the order of E. L. Smith, Six Hundred Dollars at Eight per cent. interest from date until paid. Value received. H. J. Davenport"—and which note was indorsed or guaranteed by the defendant and payee E. L. Smith as follows: "Guarantee

Payment. E L Smith.'' The execution of the note by Davenport and the indorsement thereof by the payee, Smith, were admitted by the answer, but the defendant denies any knowledge or information sufficient to form a belief as to the ownership of the said note, and denies each and every other allegation in the complaint. Upon the trial plaintiff introduced evidence tending to prove that the defendant E. L. Smith was the former owner and payee of the note in suit, and that in the spring of 1889 he sold and delivered said note to one Mark Mears; that said Mears refused to purchase said note unless the defendant Smith guaranteed the payment thereof, and thereupon the said Smith wrote the words, ''Guarantee Payment,'' and signed the same ''E. L. Smith,'' on the back of the note. Upon cross-examination the plaintiff, in response to questions asked him by defendant's counsel, testified that the note in suit formerly belonged to plaintiff's father, who purchased the same of said Mark Mears in 1889; that his father continued to own the note from that time to the time of his death, which occurred in February, 1893. Upon direct examination the plaintiff was interrogated by his counsel, and testified as follows: ''Q. Who owns this note in suit?'' This question was objected to as immaterial, irrelevant, and incompetent, and not the best evidence, called for a conclusion of the witness, and not for the statement of any fact; which objection was overruled by the court, and the witness answered, ''I do.'' Thereupon the plaintiff offered in evidence both sides of said note, to which a similar objection was made and the further objection that it appears in evidence that the note in suit was sold by Mark Mears to the father of the plaintiff, and that he was the owner of the same until the day of his death, and that the

note was a part of the estate when he died, and that it has not been proven that the plaintiff became owner of this note from his father's estate, which objection was overruled, and to which ruling the defendant excepted, and the note and indorsement were admitted in evidence. The defendant Smith thereupon moved the court to direct the jury to return a verdict in his favor, for the reasons stated in the objection, which motion the court intimated should be granted. Thereupon the plaintiff, by permission of the court, recalled the witness, who testified as follows: "My father died in Vermont about nine years ago last February. I and my mother were residing with him at the time. Myself and my mother were the only members of his family. I did not have any brothers or sisters living, either of the whole or half blood, at the time of my father's death, nor any nieces nor nephews. I received the note in suit from my mother before the present action was brought. Q. Do you know, at the time of your father's death, the condition of his estate with regard to debts of your father, if any? A. I do. Q. You may now state what was the condition of your father's estate at the time of his death with regard to liabilities or debts, if any." Defendant objects as incompetent, immaterial, and irrelevant, not the best evidence; the best and only evidence of the fact asked the witness is the record of the probate proceedings had in the court in Vermont, or other court having jurisdiction of the property and the subject-matter of the proceedings, as well as the parties, heirs, devisees, or legatees of the estate. This objection was sustained, and the plaintiff excepted. The witness was then asked: "How much of an estate, approximately, did your father have, at the time of his death, in property which passed to his estate? A. Seven or

19 S. D.—6

eight thousand dollars, both personal and real.   Q.  When did you receive this note from your mother?  A. At the time of the settlement of my father's estate, before this action was brought.  .Q. Do you know whether your father, prior to his death, made a last will and testament of his property?  A. I do know.   Q. State if your father left a last will and testament of his property at the time of his death."  This question was also objected to for the reasons before stated, and the objection was sustained.  "Q. Do you know of your own knowledge whether the estate of your father had been closed up?  A. Yes, sir.  Q. Has the estate of your father been completely closed up?"  This question defendant also objected to for the reasons before stated, and the objection was sustained, and to this ruling of the court excluding the evidence the plaintiff excepted.  Thereupon, upon motion of the defendant, Smith, a verdict was directed in his favor, to which plaintiff also excepted.

The principal question presented in this case is as to whether or not, upon the proof offered, the appellant was entitled to recover, and as to whether or not the court erred in its rulings.   It is contended by the appellant that upon the proof as shown in the record, (1) the appellant having produced the note with the respondent's indorsement thereon, with proof that he was the owner of the note, entitled him to recover upon the same as the lawful owner and holder thereof; (2) that if the evidence called out on cross-examination of the appellant that the note was owned by his father at the time of his death, and that it constituted a part of his estate, was prima facie sufficient to defeat his recovery, then the court erred in excluding the evidence of the witness tending to prove that the

estate was closed up, that there were no debts against the es-
tate, and that he and his mother were the sole heirs of the
estate, and that the note was given to him by his mother. Re-
spondent concedes, as a general proposition, that the holder of
a promissory note payable to payee or order, and indorsed
without limitation, makes a prima facie case by the introduc-
tion of the note without further proof. He also concedes that
the note in suit bore such indorsement, and that the introduc-
tion of the note, without more, would unquestionably have
made a prima facie case for the plaintiff upon the question of
ownership. But, in addition to the proof furnished by the
note itself and the indorsement thereon, it is contended by the
respondent that the note belonged to the plaintiff's father, who at
the time of his death was the sole owner; that the note was a
part of his estate, and that the plaintiff claimed title directly
from the estate, and not as a purchaser in due course for value;
that the plaintiff does not show by competent evidence that he
was the owner of such note—in other words, that, having been
shown by the witness that his father owned the note at the
time of his death, and that it was a part of his estate, he could
only show by record evidence of the probate court in the state
of Vermont, where the father died, that all debts against the
estate of his father had been paid, and that he became the
owner of the note by an order or distribution made by such
court.

We are inclined to take the view that the respondent is
right in his contention, and that the court ruled correctly in
excluding the evidence of the plaintiff as to the condition of
the estate, and that, in the absence of competent evidence that
the estate had been closed up, and all debts paid, and the note

in controversy was either awarded to the mother or the plaintiff as part of his or her share of the estate, the plaintiff failed to show a right of action in himself. Under our system of probate procedure the right to the possession of the real and personal property during probate proceedings and until the estate is fully settled and a distribution made is vested in the administrator or executor. Section 147, Probate Code, provides: "The executor or administrator is entitled to the possession of all the real and personal estate of the decedent, and to receive the rents and profits of the real estate, * * * until, the estate is settled or until delivered over by order of the county court to the heirs or devisees. * * * The heirs or devisees may themselves, or jointly with the executor or administrator, maintain an action for the possession of the real estate, or for the purpose of quieting title to the same, against any one except the executor or administrator." Section 242, Id., provides: "The executor or administrator must take into his possession all the estate of the decedent, real and personal, except the homestead and personal property not assets and collect all debts due to the decedent or to the estate.'" It will thus be seen that the executor or administrator is entitled to the possession of the real and personal estate, and is the only person apparently authorized to institute an action involving the personal property, as it will be noticed that the heirs or devisees are only authorized to maintain an action for the possession of real estate. These sections of our Code were evidently copied from the Code of California, and the Supreme Court of that state in the early case of Beckett v. Selover, 7 Cal. 215, held that "both the real and personal estate of the intestate vest in the heirs subject to the lien of the administrator for the pay-

ment of debts and expenses of administration, and with the right in the administrator of present possession." This view seems to be sustained by the later cases in California. In Elder et al. v. Horseshoe Mining & Milling Co. et al., 9 S. D. 636, 70 N. W. 1060, this court took the same view, adopting the construction given to their sections by the Supreme Court of California as the proper construction to be given our own sections. Under this construction of our Probate Code the plaintiff would have no right to institute an action on the note in question until the probate proceedings in the case were finally terminated and it was shown that all the debts of the estate had either been paid or were barred under the probate statute and the property distributed to the heirs or devisees. The Supreme Court of Iowa, under a statute quite similar to our own, takes substantially the same view of their statute. In Phinny v. Warren, 52 Iowa 332, 1 N. W. 522, that court says: "Defendant insists that the plaintiffs have no remedy at law because there has been no administration and no distribution, and no remedy in equity because there is no ground of equitable jurisdiction. If the time had not expired within which an administrator might be appointed, it would seem to be certain that an action could not be maintained." Baird v. Brooks, 21 N. W. 163; Stewart v. Phenice, 22 N. W. 636; Foss v. Cobler, 105 Iowa 728, 75 N. W. 516. We are of the opinion that evidence showing a termination of the probate proceedings in Vermont was necessary, and that this could only be shown by competent evidence, which, in the absence of proof of their loss or destruction, were the records of the probate court; and such record could only be proven by a properly exemplified or examined copy of such

record. It seems to be the general rule that oral proof of the contents of a record of the proceedings of a court is inadmissible except in the case of proof of loss or destruction of the original records; and that the contents of such records can only be proven by a properly exemplified or examined copy of the same. 1 Greenleaf on Evidence, §§ 501 521; Murphy v. Hanrahan, 50 Wis. 485, 7 N. W. 436; In re Higgins' Estate, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116 In Murphy v. Hanrahan, supra, the Supreme Court of Wisconsin, speaking upon this subject, says: "This brings us to the precise grounds upon which the nonsuit was granted. The kind of proof offered to show that there were no debts against the estate was at least questionable for any purpose, and especially for the purpose sought. Administration with the proper notices, and no claim having been presented, would seem to constitute the only satisfactory evidence that there were no claims against the estate." While our Code does not declare in terms that only such copies are admissible, it provides that "copies of the records and judicial proceedings in the court of any state or territory of the United States shall be admissible in evidence in all cases in this state when attested" in the manner prescribed in the section. Section 529, Code Civ. Proc. The provision of the statute above quoted seems to contemplate that in proving records of another state or territory such proof should be made by exemplified or examined copies, in accordance with the views of Mr. Greenleaf in his work on Evidence, above cited. It is quite clear, therefore, that in the absence of such proof the plaintiff was not entitled to recover, and that the court ruled correctly in directing a verdict for the defendant.

The judgment of the Circuit Court and order denying a new trial are affirmed.