STATE ex rel. KING, Relator, *v.* DISTRICT COURT et al., Respondents.

(No. 2,922.)

(Submitted October 3, 1910.    Decided November 5, 1910.)

[111 Pac. 717.]

*Probate Proceedings—District Court—Extent of Jurisdiction— Estates of Decedents—Sales of Personalty—Confirmation— Refusal—Power of Court.*

Probate Proceedings—District Courts—Extent of Jurisdiction.
    1.  In the exercise of its jurisdiction in probate matters, the district court is limited in authority to that expressly conferred by statute or necessarily implied.

Same—Estates—Sales of Personalty—Confirmation—Refusal—Power of Court.
    2.  Though the statute does not in express terms authorize the district court, sitting in probate, to refuse confirmation of a sale of personal property belonging to an estate, on being advised of a subsequent bid of ten per cent in excess of the former one, together with costs of resale, such authority is necessarily implied from section 7548, Revised Codes, which, in providing that no sale of property belonging to the estate of a decedent shall be valid unless a return thereof be made to the court, by implication authorizes a hearing thereon, and hence clothes the court with judicial discretion to either confirm, or withhold confirmation of, a sale of such property.

Application on the relation of James H. King, for writ of supervisory control to the District Court of the Second Judicial District, in and for the county of Silver Bow, and Hon. Michael Donlan, a judge thereof, to compel confirmation of a sale of personalty of a decedent's estate.    Dismissed.

*Mr. W. D. Kyle* and *Mr. M. P. Gilchrist* submitted a brief in behalf of Relator, and argued the cause orally.

In behalf of Respondents, *Mr. H. A. Frank,* submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Upon June 3, 1909, Harry Stover, a resident of the state of California, died intestate leaving certain personal property in

Silver Bow County, Montana. A part of his property was an equitable interest in forty-five thousand shares of the capital stock of the Butte Jockey Club and Fair Association, a Montana corporation. The Miners' Savings Bank & Trust Company of Butte was duly appointed and qualified as administrator of the estate in Montana. An inventory and appraisement of that portion of the estate situated in Montana was made and returned into court. On July 13, 1910, the administrator filed its petition for an order to sell the interest of the estate in the stock mentioned above. After due notice and a hearing, an order of sale was made and due notice of the time and place for holding the sale given, and on August 2, 1910, the interest of the estate in said capital stock was sold to this relator, James H. King, for $10,250. Thereafter a return of the sale was made to the court and an order issued fixing a time and place for hearing the return, and due notice thereof given. On August 20, 1910, when the matter came on for hearing before the court, written objections to the confirmation of the sale were made by one R. O. Egan, who at the same time presented a bid, by C. H. Egan, of $11,275 for the interest of the estate in the stock in question, and which bid also contained an offer to pay the expenses incident to a resale of the property, if a resale was ordered. The court took evidence relative to the value of the interest of the estate in the stock, and thereupon refused to confirm the sale to King, and ordered a resale at public auction, for September 24, 1910. Notice of the time and place of the resale was given, and thereupon King made application to this court for a writ of supervisory control to compel the district court to set aside the order of resale and confirm the sale to him, if it appeared that the proceedings leading up to the first sale were in all things regular. An order to show cause was issued, and upon the return thereof the district court and judge interposed a motion to quash the order to show cause, and the matter was submitted for decision upon the merits.

There is but one question presented for our determination, *viz.*: May the district court, sitting in probate, refuse to confirm

a sale of personal property upon the sole ground that a bid of ten per cent in excess of the former bid, together with the costs of resale, has been received? If this had been a sale of real estate such a question could not arise. The statute authorizes the court to refuse to confirm in such a case. (Sec. 7576, Revised Codes.) But counsel for relator contend that since a provision similar to that contained in section 7576, above, is not found in the Article dealing with sales in general, or in the Article dealing with sales of personal property, the court has not the authority sought to be exercised in this instance. Section 7548, however, in dealing with sales of property belonging to estates, does provide: "No sale of any property of an estate of a decedent is valid unless made under order of the district court or a judge thereof, except as otherwise provided in this chapter. All sales must be made under oath reported to and confirmed by the court or judge before title to the property sold passes."

Our district courts have exclusive original jurisdiction in probate matters (Constitution, Art. VIII, sec. 11). This court has held that in the exercise of that jurisdiction the courts are limited in authority to that expressly conferred by statute or necessarily implied. (*Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac. 334, and cases cited.) Authority to confirm a sale of personal property belonging to an estate is expressly granted by section 7548 above. What, if any, authority is implied? Since a return of sale must be made to the court before confirmation, it follows that the authority is implied for a hearing upon such return. It cannot be that the court is compelled to confirm a sale without inquiry. In fact, counsel for relator do not insist upon this. If, then, the court has authority to order a hearing upon the return, it necessarily follows that if the result of such hearing discloses that the sale ought not to be confirmed, the court has authority, necessarily implied, to refuse confirmation; otherwise the whole proceeding would be farcical.

Let us suppose that King's bid for this property had been but $250 and a sale to him for that amount had been ordered, would it then have been incumbent upon the district court or judge to

confirm such sale, even though the judge knew that the property was reasonably worth $12,000?  The case supposed is extreme, but, as Judge Cooley once said: "To suppose an extreme case is the best method of demonstrating the danger of false doctrines." We submit that the bare statement of the supposititious case above is sufficient to indicate that a negative answer only can be given to the question.

A reference to some of the provisions of the Codes dealing with probate matters will serve to indicate the general policy of the law.  The court may require an executor or administrator to furnish additional securities on his official bond (sections 7458, 7466); it may suspend the powers of such an officer (sections 7465, 7488); or may revoke the letters of such an officer (section 7500); or may remove such officer from his trust (section 7719).  The court may of its own motion require frequent reports from an executor or administrator (section 7634), and may, without notice having been given, order the sale of perishable property of an estate (section 7551).  Pending settlement of an estate, the court may order that money belonging to it be loaned at interest (section 7652).  Now what is the purpose running through all these provisions?  Clearly to place in the hands of the court authority sufficient to secure a just administration of the estate, to the end that creditors may be protected and the heirs receive the largest amount of the property compatible with an economic but complete administration of the estate.  This idea is conveyed to us in expressions frequently appearing in the Codes dealing with probate matters; such, for instance, as the following: "If it appears to be for the best interest of the estate," *etc.;* or: "If it appears to the court to be for the advantage of the estate," *etc.,* certain things are to be done.  In other words, the probate court is charged with the oversight of probate matters, and its duty in the premises is to see that the best interests of the estate are promoted by the officer (executor or administrator) who is charged with the administration of the estate.  When, then, a return of sale of personal property is made, it is the duty of the court to examine into the

matter, not only to ascertain that the proceedings have been regular or that fraud has not been committed, but equally to ascertain whether the interests of the estate will be best subserved by confirming or refusing to confirm such sale.

The successful bidder at an administrator's sale does not occupy the position of one of two individuals who are trading between themselves and dealing at arm's-length. Such successful bidder is not a purchaser as that term is generally understood. He knows that without the approval of the court his bid amounts to nothing; or, to state the same principle differently: While, ordinarily, there are but two parties to a sale of personal property—the seller and the buyer—in a sale of personal property belonging to an estate there are in truth three parties to the transaction, *viz.*: (1) the seller, that is the estate, represented by the administrator; (2) the buyer; and (3) the district court. The buyer and seller may make any sort of an agreement, but without the approval of the court they have their trouble only for their reward; for their transaction is not a completed sale until confirmed by the court. The authority of the court to refuse confirmation of a sale of personal property when a much better bid is received, though not granted by express statutory enactment, is implied and is necessary in order that the purpose of the law be carried into effect. In this we do not disregard the right of the successful bidder, but only give emphasis to the fact that the interest of the estate is paramount.

The statutes of Indiana are substantially the same as our own. In *Williams* v. *Perrin,* 73 Ind. 57, the court was considering just such a case as the one before us, and in disposing of the question it said: "In reference to sales of real estate by administrators and guardians, it is expressly enacted that the sales shall be reported to the court for confirmation, and, if the court be satisfied that the sale had been unfair, or that a sum exceeding the sum bid or agreed on at least ten per cent, exclusive of the expense of the sale, can be obtained, the court may vacate the sale. While there is no such express provision with reference to sales of personalty, made under the order of the court,

there can be no doubt that, under its general jurisdiction over the settlement of estates of decedents, the court has the power to, and in the exercise of a sound discretion may, refuse to confirm a private sale of personalty, if it appear that a substantial advance can be had upon the price reported.'' While the court in Indiana has general jurisdiction, our district courts sitting in probate, within the jurisdiction conferred upon them, have all the powers of the Indiana court; in other words, they have complete authority to do whatever the statute authorizes them to do, and it is immaterial whether the authority is conferred by express declaration of statute or is implied.

Our conclusion is that from the express provisions of section 7548 above, there is implied authority for the district court or judge to exercise a judicial discretion in determining whether a particular sale of personal property belonging to an estate shall or shall not be confirmed. The Egan bid exceeds the bid made by King by $1,025, exclusive of cost of resale. In our opinion it cannot, then, be said from the record that the district court abused its discretion in this particular instance in refusing to confirm the sale made to King.

The motion to quash is sustained and the proceeding is dismissed.

*Dismissed.*

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.