In re BRADFIELD'S ESTATE. LATUS, Respondent, *v.*
NELSON, Executor, Appellant.

(No. 5,345.)

LATUS, Appellant, *v.* NELSON, Executor, Respondent.

(No. 5,289.)

(Submitted September 18, 1923. Decided December 14, 1923.)

[221 Pac. 531.]

*Executors and Administrators—Duties and Powers—Accounts*
*—Settlement—Fraud—Specific Devises—Rents and Profits—*
*To Whom Payable—Costs.*

Executors and Administrators—Making Loans Under Power Given by
    Will—Court may Supervise.
    1. A provision of a will authorizing an executor to make real estate
    loans and to pay the interest therefrom to a named legatee during
    the remainder of her life did not deprive the probate court of juris-
    diction to compel the executor to exercise good faith and good
    judgment in making loans nor authorize him to unduly prolong the
    settlement of the estate.

Same—Accounts—Settlement—When not Conclusive—Fraud.
    2. An order settling an executor's account is not binding upon
    the court in considering his second account filed about a year later,
    the provision of section 10303, Revised Codes of 1921, making settle-
    ment conclusive, having no application where the executor has been
    guilty of fraud.

Findings—Time for Filing—Statute Directory.
    3. The requirement of section 9366, Revised Codes of 1921, that
    in a case tried by the court its decision or findings must be filed
    within twenty days after submission of the case, is directory merely.

Judgments—*Nunc Pro Tunc*—When Proper.
    4. A *nunc pro tunc* judgment may be entered where the case was
    in such a condition at the date to which the judgment is to relate
    back that a final judgment could have been entered immediately.

Appeal and Error—Filing *Nunc Pro Tunc* Order—Delay—When not Re-
    versible Error.
    5. Where in a probate proceeding the trial judge after making
    findings of fact resigned his office, without making a final order,
    a final order made by his successor some three months thereafter
    *nunc pro tunc* as of date on which the findings were filed, *held* not
    reversible error, under the circumstances of the case.

Executors and Administrators—Specific Devises—Rents and Profits—Pay-
    able to Devisee, When.
    6. Rents and profits of real estate specifically devised, when not
    needed for the payment of debts or for administration purposes,
    are payable to the devisee and not to the residuary legatee.

Same—Specific Devises—Rents and Profits—Duty of Executor.

7. While it was the duty of an executor not to deliver possession of land specifically devised until the expiration of the time for filing claims against the estate had expired, and then only upon order of the court, and he acted at his peril in doing otherwise, the court properly refused to compel him to account for the proceeds of a crop raised on the land, to the residuary legatee where they were not needed to pay estate debts or expenses of administration.

Same—Costs—When not Recoverable.

8. Where an executor made a real estate loan without authority of court first obtained, he was not entitled to recover the expense incurred in procuring an abstract of title and his attorney's fee as costs.

*Appeals from District Court, Stillwater County; Albert P. Stark, Judge.*

IN THE MATTER of the estate of Nellie Bradfield, deceased. Proceeding between George N. Latus, and Olof Nelson as executor of the last will and testament of Nellie Bradfield, deceased. From an order relating to executor's accounts and revocation of letters testamentary, both parties appeal. Appeals consolidated. Modified and affirmed.

*Mr. Jos. R. Wine,* for Respondent in cause No. 5345 and for Appellant in cause No. 5289, submitted briefs and argued the causes orally.

The statutes of this state regulating the administration of estates have for their object a clear purpose to place in the hands of the court authority sufficient to secure a just administration of the estate, and to see that the beneficiaries are not cheated out of their property. (See *State ex rel. King* v. *District Court,* 42 Mont. 182, 111 Pac. 717; *Williams' Estate,* 55 Mont. 63, 1 A. L. R. 1639, 173 Pac. 790; *In re Higgins' Estate,* 15 Mont. 488, 28 L. R. A. 116, 39 Pac. 506; *Scheffer's Estate,* 58 Minn. 29, 59 N. W. 956; *Jones* v. *Broadbent,* 21 Idaho, 555, 123 Pac. 476; *Goad* v. *Montgomery,* 119 Cal. 552, 63 Am. St. Rep. 145, 51 Pac. 681; *In re Allard's Guardianship,* 49 Mont. 219, 141 Pac. 661.)

A reading of sections 7057, 10138, 10139, 10257 and 10282, Revised Codes of 1921, in the light of the Montana decisions

referred to below, clearly shows that the rents and profits, inclusive of the crops planted and growing on lands specifically devised, at the time of the death of decedent, are assets and belong to the estate, and should be accounted for as such, and that the special devisee is not entitled to possession of land devised until the expiration of the time for the presentation of claims against the estate (in this case ten months), and in no event until an order has been made by the court giving such possession to such devisee. (*In re Higgins' Estate,* 15 Mont. 485, 28 L. R. A. 116, 39 Pac. 506; *In re Dolenty's Estate,* 53 Mont. 33, 39, 161 Pac. 524; *In re Smith's Estate,* 60 Mont. 276, 297, 199 Pac. 696; *Murphy* v. *Nett,* 51 Mont. 82, 86, L. R. A. 1915E, 797, 149 Pac. 713.)

*Mr. P. R. Heily,* for Appellant in cause No. 5345 and for Respondent in cause No. 5289, submitted a brief and argued the causes orally.

The executor under the will in this case was obligated and fully empowered to make loans of the estate funds, which he made and which are complained of, and if he made them in good faith and exercised such prudence and good judgment as ordinarily prudent persons exercise in making investments of their own funds he is not responsible for resulting loss. (18 Cyc. 254; *Atlantic Trust Co.* v. *Powell,* 23 Misc. Rep. 289, 50 N. Y. Supp. 866; 39 Cyc. 417; Am. & Eng. Ency. of Law, sec. 353; 26 R. C. L. 1307; *Nyce's Estate,* 40 Am. Dec. 516, note; *Miller* v. *Congdon,* 14 Gray (Mass.), 115.) Lawfulness and fitness of investments are to be judged as of the time when made and not by subsequent facts which could not have been anticipated. (26 R. C. L. 1306, sec. 159; *Brown* v. *French,* 125 Mass. 410, 28 Am. Rep. 245.)

"In all cases, the exercise of the power to render judgments *nunc pro tunc* presupposes the actual rendition of a judgment, and a mere right to judgment will not furnish the basis for such entry." (15 R. C. L., sec. 64.) "There is no power

in the court in any case to declare that an order shall be so entered that it shall have the effect or shall appear to have been made on a previous day, where in fact it was not made on that day. The court cannot in this manner declare that a thing was done which might have been or should have been done, but which was not done." (*Cowdery* v. *London etc. Bank*, 139 Cal. 298, 96 Am. St. Rep. 115, 73 Pac. 196; *Territory* v. *Clayton*, 8 Mont. 1; *Power* v. *Lenior*, 22 Mont. 169, 56 Pac. 106; *Ninde* v. *Clark*, 62 Mich. 124, 4 Am. St. Rep. 823 and note, 28 N. W. 765; *O'Sullivan* v. *People*, 144 Ill. 604, 20 L. R. A. 143 and note, 32 N. E. 192.)

While the executor permitted the devisee to take possession of the land devised prior to the time fixed by law for compelling such delivery, Ruth Nelson, the special devisee, was nevertheless entitled to the land and the rents and profits thereon in the absence of the necessity of submitting them to payment of creditors' claims or debts. (*Washington* v. *Black*, 83 Cal. 290, 23 Pac. 300; *Frelinghuysen* v. *New York Life Co.*, 31 R. I. 150, Ann. Cas. 1912B, 237, 77 Atl. 98; 18 Cyc. 631; 8 R. C. L. 368, sec. 13.)

HONORABLE WM. H. POORMAN, District Judge, sitting in place of MR. JUSTICE STARK, disqualified, delivered the opinion of the court.

This cause involves the separate appeals of the executor and of the residuary legatee from separate parts of the order made by the trial court relating to the accounts of the executor and to the revocation of letters testamentary issued to him. The appeals were heard and submitted as one cause, and they involved the same statement of facts, and are here considered as consolidated for the purpose of this decision.

Nellie Bradfield died testate on the twenty-sixth day of September, 1917. The will is dated September 22, 1917, and its provisions, so far as involved in these appeals, are as follows:

[69 Mont. 247.]

"First: My executor is hereby instructed and authorized to pay all doctor bills, hospital bills, and funeral expenses, together with any other indebtedness against my estate.

"Second: I hereby give and bequeath to my niece, Ruth Nelson, my homestead located in Stillwater county, also the sum of five hundred dollars to be paid to her upon my demise."

Third: Relates to a special bequest to the children of Elsie Anderson, a sister of the testatrix.

"Fourth: The balance of my estate, after all of the above bequests and expenses have been paid, I hereby direct my executor to invest in real estate loans, and instruct him to pay to my sister, Hannah Latus, of Plummer, Idaho, all of the interest derived from said loans during the remainder of her life, and upon the death of my said sister all of the balance of my estate to be paid to my nephew, George N. Latus, son of my sister, Hannah Latus.

"Fifth: I hereby appoint my brother, Olof Nelson of Columbus, Montana, as executor of my estate, and instruct him to use due diligence in carrying out the bequests here made."

The will was admitted to probate on November 8, 1917, and letters testamentary were issued to said Olof Nelson. Notice to creditors was published for the first time on November 29, 1917, and the time for the presentation of claims against the estate expired September 29, 1918. On June 11, 1920, the Hannah Latus mentioned in the will, as found by the trial court "duly assigned and conveyed and released all her life estate in the residue of the estate to the remainderman, the said George N. Latus referred to in said last will and testament, by an instrument in writing, and that the said instrument was filed in the office of the county clerk and recorder of Stillwater county, Montana, on the twenty-ninth day of September, 1921, and that said instrument was filed with the papers in the estate on said last date." The court further found: "That the said George N. Latus by reason of the premises aforesaid is now sole owner and entitled to the possession of all of the residue of said estate."

On May 4, 1921, the executor made a report containing an account of his receipts and disbursements, and among the disbursements appear the following items: "W. W. Toothaker, labor, $175.88; M. L. Parcells, real estate mort. invest., $3,000; Pete Marcotte, real estate investment, $774.19."

On May 17, 1921, the court, after notice and hearing, made the following order respecting said accounts: "It is hereby ordered, adjudged and decreed by the court that the said account be and the same is in all respects approved, allowed and settled, and that the payments shown to have been made by said executor were legally and properly made."

On May 23, 1922, the said executor made his report and account, wherein he makes reference to his former account and the allowance thereof, and in the list of personal property reference is made to the note of M. L. Parcells dated January 13, 1919, payable three years after date, with interest at seven per cent per annum, and secured by real estate mortgage on 552 acres of farming land in Stillwater county, which note is for $3,000. The payee of the note is not named. Reference in said report is also made to a note for $774.19, made, executed and delivered to Olof Nelson, executor, by Peter Marcotte, and secured by real estate mortgage on land in Stillwater county, Montana. Neither the date of this note nor the interest thereon is given.

Among the disbursements in this latter report appears this item: "Obligations incurred in foreclosure, Olof Nelson v. M. L. Parcells, William A. Wilson & Lee Perdue: Abstract, $17.50; attorney fees, P. R. Heily, $100." Also the item: "Total debts of said estate outstanding, $179.25."

The account also makes further reference to the foreclosure proceedings had with reference to the Parcells mortgage and to the fact that the said Latus had refused to pay the said expenses, and of the offer of the executor to close the estate if Latus would make such payment. The report contains the further statement that the loans were made in good faith, and that the security was ample, and also that the executor had

collected some interest on these loans and paid the same to Hannah Latus.

This account was set for hearing on June 5, 1922, and on that date the residuary legatee filed his objections and exceptions to this latter report, wherein, among other things, he states that no petition or order for distribution of the estate, total or partial, had ever been made or filed, and that the said executor, pending the settlement of said estate, and without applying for or securing any order or permission of court, made the said loan of $3,000 to said M. L. Parcells, and that the security taken therefor was inadequate; that the interest on said loan due January, 1921, and January, 1922, had not been paid, and that the taxes on said land had not been paid for the years 1920 and 1921, said delinquencies amounting to $245.66, and that the said Latus repudiates said pretended loan; that on the 19th of April, 1919, the Marcotte loan was negotiated by the executor for the sum of $774.19; that a mortgage was taken on certain real estate to secure the payment of the same, the said loan being for five years, with interest at six per cent per annum, and that the going rate of interest at said time in said locality was eight per cent per annum, and that the said Latus repudiates said loan. The contestant further objects to the item "W. W. Toothaker, common labor, $175.86," which the contestant alleges was for labor and services rendered in planting and producing a crop on the Bradfield homestead. The contestant further objects to said report and account because it does not list or account for the income from said Bradfield homestead, which income, he claims, was in excess of $1,000. Contestant further excepts and objects to the item of $17.50 as abstract fees, and the attorney fee of $100. Contestant further claims that there has been a wasting of the estate, and that the executor had been negligent in filing his reports and accounts.

On June 5, 1922, said last report and objections thereto came on for hearing, and evidence was taken. Thereafter, and on December 21, 1921, the court made and filed findings of fact

and conclusions of law, in which it is found and declared: "That the said George N. Latus * * * is now the sole owner and entitled to the possession of all of the residue of said estate"; that the executor assumed and pretended to loan to the said M. L. Parcells the said sum of $3,000 without filing any petition for the purpose of securing any order or authority from the court so to do; that the land given as security therefor is incapable of being irrigated, and that the said land, at the time of making said loan possessed no value for sale or loan purposes; that the interest on said loan was two years in arrears, and that the taxes had not been paid for the years 1920, 1921, and 1922; that the Pete Marcotte loan was made by the executor from the funds of the said estate without applying for or receiving any order or permission from the court therefor; that on the same date, or the day following the making of said loan, the said executor himself purchased the land on which he had taken security for the payment of said Marcotte loan, and had himself assumed the payment of said mortgage; that the said executor had thereby loaned to himself, as an individual, the funds held by him in his possession as the executor of said estate; and that the said transaction was a fraud upon the court and upon the residuary legatee.

With reference to the homestead specially devised to Ruth Nelson, the court found: That the possession of said land passed to Ruth Nelson immediately upon the death of the deceased, and ever since has been in her possession, and that any connection the executor had with said land and with the handling of the crops grown thereon was only as the agent and representative of said Ruth Nelson and not in his capacity as executor.

That in the account filed by the executor on the 4th of May, 1921, his statements relative to the Parcells and Marcotte real estate investments and loans contain no explanation of said items, nor did said account specify the respective length of time of said loans or interest payable thereon, ·nor

specify or give the description of this property which was mortgaged as security for said loans.

The court further found: That said executor had already paid out by way of attorney's fees for the administration of said estate the sum of $538.82, which said sum the court found to be a fair and reasonable sum, and the court further found that the additional claim for $100 and for $17.50 were proper charges against the said estate.

The court also found that the said Olof Nelson cannot properly longer serve as executor of the last will of said deceased; that his interests are at variance with and adverse to those of the residuary devisee and legatee; that more than five years have elapsed since the appointment of the said Olof Nelson as executor, and that he has not filed his final account, although such final account could have been filed within one year after his appointment; that because of his delay in bringing the affairs of the estate to a close the estate has suffered loss.

The conclusions of law made by the court follow the findings of fact.

It further appears from the record that Honorable Albert P. Stark, the judge who presided at said hearing, and who made said findings of fact and conclusions of law, ceased to be judge of said court on December 31, 1922, and that on the twenty-fifth day of April, 1923, Honorable H. J. Miller, the successor of said Judge Stark as judge of said court, made and entered an order as of December 21, 1922, in conformity with the findings of fact and conclusions of law theretofore made by Judge Stark. It further appears from the transcript and admissions: That on March 19, 1923, Judge Stark signed, settled and allowed a bill of exceptions with reference to what had been done or ordered done by him. That on May 9, 1923, Honorable H. J. Miller signed, settled and allowed a bill of exceptions "as to orders made or things done by him." That some time later, the date of which is not given, the bill of exceptions was transmitted to Judge Stark at Helena, Montana. That counsel for

respondent Latus appeared specially before said Judge Stark and objected to the settlement of said bill for the reasons: (1) That said bill had already been signed and allowed by Judge Miller, and thereafter filed on May 11, 1923, and there is no authority in law for the signing of an additional certificate; (2) that Honorable Albert P. Stark had already settled and allowed a bill of exceptions herein identical with the present bill, and that, when he had once settled a bill of exceptions to the proceedings, his functions and authority on that appeal were at an end. On June 4, 1923, Judge Stark attached his certificate to the bill of exceptions presented to him.

The executor, Olof Nelson, appeals from that part of the order made by Judge Miller on April 25, 1923, based upon the findings of fact and conclusions of law made and filed by Judge Stark on December 21, 1922, which disallows the expenditure made by the executor for the Marcotte and Parcells loans and orders the executor to account therefor, with interest, and also from that part of the order which revokes the letters testamentary theretofore issued to said Olof Nelson.

The residuary legatee, Latus, appeals from that part of the same order wherein the court approved of the act of the executor in delivering possession of the homestead devised to Ruth Nelson and permitting her to retain the money received from the sale of crops therefrom, and from that part of the order allowing the expenditure of $100 attorney's fees for preparing to foreclose the Parcells mortgage, and the further sum of $17.50 for an abstract relating to said mortgage.

On September 4, 1923, the residuary legatee, by his counsel, filed a motion to dismiss the appeal of the executor on the ground that the purported bill of exceptions contained in the record cannot be considered, for the reason that the same was not settled and allowed in the manner prescribed by law.

The uncertainty of the record as to dates, the admissions of counsel for the legatee, Latus, the fact that he had notice of the settlement of this bill of exceptions by Judge Stark on the fourth day of June, 1923, and made no objections thereto ex-

cept under his special appearance, wherein it was admitted
that a bill of exceptions had been settled, signed and allowed
by Judge Stark, and that the bill of exceptions in this record
is identical with the bill so settled, and the interlocking char-
acter of these appeals, justify the overruling of the motion
to dismiss and the determination of the appeals upon the
merits.

The appealing executor has raised the question that by reason
[1] of the provisions of the fourth paragraph of the will
he was authorized to make real estate loans and to pay the in-
terest derived therefrom to the legatee named in that part of
the will during the remainder of her life; that a trust was
thus created, and that, as trustee, it was his duty to make the
loans and to collect and disburse the interest in the manner
named in the will; and cites 18 Cyc. 254; also 30 Cyc. 417;
*Atlantic Trust Co.* v. *Powell*, 23 Misc. Rep. 289, 50 N. Y. Supp.
866; 23 C. J. 1172; *In re Higgins' Estate*, 15 Mont. 474, 28
L. R. A. 116, 39 Pac. 506. But this provision of the will does
not deprive the court of jurisdiction to compel the executor
to exercise good faith and good judgment in the loaning of
this money, nor does it authorize the executor, as such, to
unduly prolong the settlement of the estate. If a trust was
created—which question is not here for determination—it
would take effect when the duties of the executor ended (*In re
Higgins' Estate*, 15 Mont. 474, 28 L. R. A. 116, 39 Pac. 506);
but it appears in the record that the legatee, Hannah Latus,
had disposed of her interest to the residuary legatee, George
N. Latus. The court found as a fact that the executor had
not used either good faith or good judgment in the loaning
of the money, and, in order to preserve the estate, ordered
him to account therefor. All the other questions raised by
the appealing executor relate to questions of fact, and from
an examination of the record and of the evidence taken we
believe the court was justified in reaching the conclusions and
in making the order requiring the executor to account. A
review of the evidence herein would only prolong this opinion,

and would require a discussion of specific acts, without any resulting benefit.

For a general discussion relating to the policy of the law in dealing with executors and administrators, and of the powers of the court and of the conservation of estates, we cite the following: Sec. 10306, Rev. Codes 1921; *State ex rel. King* v. *District Court,* 42 Mont. 182, 111 Pac. 717; *In re Williams' Estate,* 55 Mont. 63, 1 A. L. R. 1639, 173 Pac. 790; *In re Higgins' Estate, supra.*

The executor claims, as a matter of law, that the order [2] made settling the account of the executor, filed on May 4, 1921, was final and binding upon the court in considering the subsequent accounts; but, in view of the facts and circumstances of this case, such position is wholly untenable, since, in view of the fraud found, the provisions of section 10303 of the Revised Codes of 1921 have no application. (24 C. J. 1032.)

By the fifth assignment of error it is claimed by the exec- [3, 4] utor "that the court erred in making and filing its *nunc pro tunc* order by Judge Miller on April 25, 1923, as of December 21, 1922," and it is claimed in the argument that Judge Miller, not having heard any of the evidence or taken part in any of the proceedings in his judicial capacity, was without power to render any final judgment, and the case should have been retried by him.

Section 9366, Revised Codes of 1921, fixes the limit of twenty days for the filing of the court's finding and decision, but the time limit prescribed in this section is merely directory. (See *Toole* v. *Weirick,* 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590.)

The power of the court to issue a *nunc pro tunc* order has been affirmed and settled by this court in *Power* v. *Lenoir,* 22 Mont. 169, 56 Pac. 106. The general rule, as stated in 23 Cyc. 840 is: "There is an inherent common-law power in the courts to cause the entry of judgments *nunc pro tunc* in proper cases and in furtherance of justice. This power belongs to

all courts of record, and may be exercised by an appellate court as well as by the trial court, but does not appertain to the clerk of the court. It can be exercised, however, only in cases where the cause was ripe for judgment, that is, where the case was in such a condition at the date to which the judgment is to relate back that a final judgment could then have been entered immediately. And this relief will not be granted where the failure to enter the judgment at the proper time was due to the party's own carelessness or negligence, or to enable him to gain an advantage over the other party to which he would not have been entitled at the proper time for entering the judgment, or generally unless it is shown that some injury or injustice would result from the refusal to take the action demanded, a motion for such an entry being addressed very largely to the discretion of the court.''

In the instant case the findings of fact and conclusions of law [5] were made and filed by Judge Stark, who tried the case on December 21, 1922. The order made by Judge Miller, in April, 1923, was based wholly thereon, and in accordance therewith. Had the order been made by Judge Stark it would necessarily have been the same, for the order must be in accordance with the findings made. The cause was ripe for judgment at the date to which the order is made to relate. Nothing remained to be done in making the order by either Judge Miller or Judge Stark but to examine the findings and to make the order in accordance therewith. In the attempted appeal by this executor to this court from the findings and conclusions, this court, of its own motion, and on April 3, 1923, dismissed the appeal on the ground that there was not any final order. Thereafter, and on the twenty-fifth day of the same month, the order was made by Judge Miller, but at whose instance the record does not disclose, nor do we think it material. Had there been no findings of fact and conclusions of law filed by Judge Stark, then a retrial would have been necessary. Both the parties have treated this order as final and have appealed therefrom, and if there

was any error or unnecessary delay in applying to the court for the final order that error was mutual. Under the circumstances here presented it would be manifestly unjust to compel the parties to bear the expense of a retrial of this cause. There was no error committed by Judge Miller in making the order appealed from.

In the appeal by the legatee, the objection made to the payment of the Toothaker claim seems to have been abandoned, as that was a debt contracted and the labor performed prior to the death of the testatrix. In the brief filed by counsel for the legatee it is stated that there are only two questions [6] presented by the appeal, to-wit: (1) The question whether crops planted and growing on land specifically devised at the time of the death of the deceased belong to the devisee or to the estate; (2) whether the estate is properly chargeable with the attorney's fee and expenses incurred with reference to the attempted foreclosure of the Parcells mortgage.

It appears from the record that certain lands were specifically devised to Ruth Nelson, the daughter of the executor, Olof Nelson; that the testatrix died four days after making the will, to-wit, on September 26, 1917. The crop of fall wheat had been planted by her on this land, which crop was harvested and removed from the land in August, 1918. The amount received from the sale of the crop is admitted to be $1,800.50. Does this money belong to Ruth Nelson, the special devisee, or does it pass to George N. Latus as residuary legatee? We are not aware that this precise question has ever before been presented to this court.

Section 7057, Revised Codes of 1921, provides: "In a specific devise or legacy, the title passes by the will, but possession can only be obtained from the personal representative; and he may be authorized by the district court to sell the property devised and bequeathed in the cases herein provided."

Section 10138 provides that the executor or administrator is entitled to the possession of all the real or personal estate

of the decedent, and to receive the rents and profits of the real estate until the estate is settled or until delivered over by order of the court or judge to the heirs or devisees.

Section 10257 and section 10282 reiterate the authority given to the executor in section 10138 to take into his possession all of the estate of the decedent, real or personal, and make it his duty so to do, and charge him with the whole of the estate of the decedent which may come into his possession.

Many cases are cited by the appealing legatees construing these sections, and reiterating the power and duty of the executor to take all property of the estate into his possession and to account therefor, and for the rents and profits of real estate, but not any of these cases determines the question as to what shall be done with the rents and profits of real estate specifically devised where the same are not needed for the payment of debts or for administration purposes; that is, whether these rents are payable to the holder of the title to the land so specifically devised, or whether they pass into the general assets of the estate and are properly distributable to the residuary legatee.

Section 10139 provides: "Unless it satisfactorily appears to the court or judge that the rents, issues, and profits of the real estate for a longer period are necessary to be received by the executor or administrator, wherewith to pay the debts of the decedent, or that it will probably be necessary to sell the real estate for the payment of such debts, the court or judge, at the end of the time limited for the presentation of claims against the estate, must direct the executor or administrator to deliver possession of all the real estate to the heirs at law or the devisees."

By the express provisions of this section it is the duty of the court, "at the end of the time limited for the presentation of claims against the estate," to direct the executor or administrator to deliver possession of all the real estate to the heirs at law or the devisees, unless it is necessary for him to

hold the estate longer and to receive the rents, issues, and profits wherewith to pay the debts of the decedent.

In *Estate of Woodworth,* 31 Cal. 595, the question presented was relative to the application of certain rents and profits from certain specially devised land to the payment of debts of the estate. The testator had specially devised certain specific tracts of land, and subsequent to the execution of the will had incurred an indebtedness and had executed a mortgage on these lands as security. The executor collected the rents from the land and applied them to the payment of this debt, and the court held that the mortgage was only security for the debt, the amount named in the note being the real indebtedness, and there being ample property in the estate not specially devised, that such indebtedness should have been paid from the general assets of the estate, and that such rents, issues and profits passed to the special devisee, rather than to the mass of the estate. This case contains an elaborate discussion by Judge Sawyer of the question here involved, quotes the common-law order of distribution, and compares it with the statutory regulations, holding that there is no substantial difference. In view of the fact that the statutes of California were at the time substantially the same as ours, this discussion by Judge Sawyer is of great interest. The particular section of the statute discussed by the California court is substantially the same as our section 10138. In the course of the discussion the following language is used at page 605: "This section expressly adopts the order, so far as the personalty is concerned, established by the common law. The real estate is made assets in case it should be required, not otherwise, and the order of priority is not changed. But it does not follow that the rents of the real estate go into the mass of the general personal estate. Undoubtedly, if required to pay the debts, as between the creditors and heirs or devisees, the rents received after the death of the testator would be applied before a sale of the real estate. But it by no means follows that, as between the general legatee of the per-

sonal estate, or the heir in case it is not bequeathed, and the devisees of the real estate, the rents would not belong to such devisee. On the contrary, it would seem to follow that, as the title vests in the devisee at the moment of the death of the testator, subject only to payment of the debts in the order prescribed by law, the rents of the land would belong to the owner of the land, subject to payment of the debts in the same order; and this, we think, is the case, unless there is some other provision affecting the question; that is to say, that the rents of the real estate accruing subsequent to the death of the testator, for the purpose of marshaling the assets, should be regarded as belonging to the realty from which they were derived. Such was the rule at common law, and no change in this respect appears to be intended.''

In the subsequent case of *Washington* v. *Black*, 83 Cal. 290, 23 Pac. 300, the supreme court made reference to the *Woodworth Case*, and we find the following language there used: ''It is true that the devisee of this land, the plaintiff, takes title from the death of the testator, and has a right to the rents and profits arising from it from the same date; but this right is subject to the right of the executrix to the possession of the land, and to receive the rents and profits arising therefrom until the happening of the events above designated.'' Later on in the opinion the court said: ''The whole estate, real and personal, under our system, is assets, and may be, if required, applied to the payment of the debts of the estate. It was so held in *Re Woodworth*, 31 Cal. 605, 613, 617, 618. Sanderson, J., in his concurring remarks, expressly includes accruing rents of the real estate among the assets. In a general sense, every part of the estate is assets which comes under the law to an executor and administrator. (1 Story, Eq. Jur., sec. 531.) The ruling in *Re Woodworth, supra,* that 'the rents and profits of real estate accruing subsequent to the death of the testator are not personal property in the hands of the executor, to be first applied to the payment of debts in exoneration of the

general personalty,' does not hold that such rents are not assets for the payment of debts."

It is undoubtedly the rule that in marshaling the assets of [7] an estate the executor may take into his possession everything that belongs to the estate and may receive the rents and profits of real estate specially devised for the time named in the statute, but he receives the rents and profits and holds them rather in the nature of security for the payment of debts or the expenses of administration, and, if not needed for those purposes, then he may not call upon such security merely to enhance the amount which passes to the residuary legatee at the expense of the holder of the title to the real estate so specially devised.

It appears in the instant case that there are ample funds to pay all debts without the use of the money received from the sale of crops grown on the Bradfield homestead, and, while it was the right, even the duty, of the executor not to deliver possession of this land to the special devisee until the expiration of the time for filing claims against the estate, and then only after an order of court was made for that purpose, it is very apparent that no one has been injured by the course followed herein. The act of the executor was subsequently approved by the court, and in fact he only did that which the court would have been compelled to do had an application been made therefor. It appears that this crop was taken from the land prior to the expiration of the time for the filing of claims, and the executor maintains that he delivered the possession to the special devisee, and that, although he harvested the crop, he did so as her personal agent or representative. The executor acted at his peril in delivering possession without an order of court having been first obtained, in the same manner that he did when he loaned money without authority; but in the loans made injury and loss resulted, but not so with the crop, for, if he had the money for the crop now in his possession, he would be required to account to the special devisee for it, not to the residuary legatee.

The findings and conclusions made by the court that the special devisee was entitled to the possession of the premises immediately following the decedent's death, of course, was technical error. The word "title" instead of "possession" should have been referred to; but this technical error does not affect the rights of the parties herein.

We adopt the decisions of the California court above referred to, and hold that the court did not err in refusing to compel the executor to account to the residuary legatee for this crop.

The finding and holding of the court that the $100 attorney's [8]  fee, and the $17.50 for abstract, being costs incurred with reference to the Parcells mortgage, which mortgage it was determined was unauthorized, cannot be sustained, and the final order made on the 25th of April, 1923, should be modified by disallowing those items, and as so modified the order appealed from is affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.